ACCEPTED
03-15-00248-CV
7124709
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 1:31:41 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00248-CV

IN THE COURT OF APPEALS FOR THE
THIRD DISTRICT OF TEXAS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 1:31:41 PM
JEFFREY D. KYLE
Clerk

BRIGHAM EXPLORATION COMPANY, BEN M. BRIGHAM,
DAVID T. BRIGHAM, HAROLD D. CARTER, STEPHEN P. REYNOLDS,
STEPHEN C. HURLEY, HOBART A. SMITH, SCOTT W. TINKER,
STATOIL ASA AND FARGO ACQUISITION, INC.,

*Appellants*,

v.

RAYMOND BOYTIM, ET AL., INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED,

*Appellees*.

On Appeal from the 201st Judicial District Court of Travis County, Texas,
Trial Court Cause No. D-1-GN-11-003205

# BRIEF OF APPELLANTS STATOIL ASA
# AND FARGO ACQUISITION, INC.

**BECK REDDEN LLP**

Gretchen S. Sween
State Bar No. 24041996
gsween@beckredden.com
Christopher R. Cowan
State Bar No. 24084975
ccowan@beckredden.com
515 Congress Avenue, Suite 1900
Austin, TX 78701
(512) 708-1000
(512) 708-1002 (Fax)

**BECK REDDEN LLP**

Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Fields Alexander
State Bar No. 00783528
falexander@beckredden.com
Parth S. Gejji
State Bar No. 24087575
pgejji@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

COUNSEL FOR APPELLANTS, STATOIL ASA AND FARGO ACQUISITION, INC.

*Oral Argument Requested*

## IDENTITY OF PARTIES AND COUNSEL

**Appellants:**                                    **Counsel for Appellants:**


**Brigham Exploration Company**          Debora B. Alsup
**Ben M. Brigham**                       THOMPSON & KNIGHT LLP
**David T. Brigham**                     98 San Jacinto Boulevard, Suite 1900
**Harold D. Carter**                     Austin, TX  78701
**Stephen P. Reynolds**
**Stephen C. Hurley**                    Timothy R. McCormick
**Hobart A. Smith**                      Michael Stockham
**Scott W. Tinker**                      Mackenzie Wallace
                                         THOMPSON & KNIGHT LLP
**(Defendants in the Trial Court)**      1722 Routh Street, Suite 1500
                                         Dallas, TX  75201




**Statoil ASA**                          Russell S. Post
**Fargo Acquisition, Inc.**              Fields Alexander
                                         Parth S. Gejji
**(Defendants in the Trial Court)**      BECK REDDEN LLP
                                         1221 McKinney Street, Suite 4500
                                         Houston, TX  77010

                                         Gretchen S. Sween
                                         Christopher R. Cowan
                                         BECK REDDEN LLP
                                         515 Congress Avenue, Suite 1900
                                         Austin, TX  78701

| Appellees: | Counsel for Appellees: |
|---|---|
| **Raymond Boytim**<br><br>**(Plaintiff in the Trial Court)** | Randall J. Baron<br>David T. Wissbroecker<br>Steven M. Jodlowski<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br><br>Samuel H. Rudman<br>Mark S. Reich<br>Michael G. Capeci<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>58 South Service Road, Suite 200<br>Medville, NY  11747<br><br>Willie C. Briscoe<br>THE BRISCOE LAW FIRM, PLLC<br>8150 N. Central Expressway, Suite 1575<br>Dallas, TX  75206<br><br>Michael D. Marin<br>BOULETTE GOLDEN & MARIN LLP<br>2801 Via Fortuna, Suite 530<br>Austin, TX  78746 |
| **Hugh Duncan**<br><br>**(Plaintiff in the Trial Court)** | Samuel H. Rudman<br>Mark S. Reich<br>Michael G. Capeci<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>58 South Service Road, Suite 200<br>Medville, NY  11747<br><br>Joe Kendall<br>Daniel Hill<br>Jamie J. McKey<br>KENDALL LAW GROUP, LLP<br>3232 McKinney Avenue, Suite 700<br>Dallas, TX  75204 |

|  | Michael D. Marin |
|  | BOULETTE GOLDEN & MARIN LLP |
|  | 2801 Via Fortuna, Suite 530 |
|  | Austin, TX 78746 |

**Walter Schwimmer**

Evan J. Smith
Marc L. Ackerman

**(Plaintiff in the Trial Court)**

BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004

**Michael Ohler**
**Ryan Ohler**
**Walter Ohler, Jr.**

Hamilton Lindley
DUNNAM & DUNNAM L.L.P.
P.O. Box 8418
Waco, TX 76714

**(Plaintiffs in the Trial Court)**

**The Edward J. Goodman Life**
**Income Trust**

Shane T. Rowley
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor

**(Plaintiff in the Trial Court)**

New York, NY 10004

Denis F. Sheils
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

**The Edward J. Goodman**
**Generation Skipping Trust**

Hamilton Lindley
DUNNAM & DUNNAM L.L.P.
P.O. Box 8418

**(Plaintiff in the Trial Court)**

Waco, TX 76714

Denis F. Sheils
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

iii

| | |
|---|---|
| **Robert Fioravanti**<br><br>**(Plaintiff in the Trial Court)** | Katharine M. Ryan<br>Richard A. Maniskas<br>RYAN & MANISKAS, LLP<br>995 Old Eagle School Road, Suite 311<br>Wayne, PA  19087<br><br>Kelly N. Reddell<br>THE REDDELL FIRM PLLC<br>100 Highland Park Village, Suite 200<br>Dallas, TX  75025 |
| **Howard Weissberg**<br><br>**(Plaintiff in the Trial Court)** | Patricia C. Weiser<br>James C. Ficaro<br>THE WEISER LAW FIRM, P.C.<br>22 Cassatt Avenue<br>Berwyn, PA  19312 |
| **Jeffrey Whalen**<br><br>**(Plaintiff in the Trial Court)** | Patricia C. Weiser<br>James C. Ficaro<br>THE WEISER LAW FIRM, P.C.<br>22 Cassatt Avenue<br>Berwyn, PA  19312 |
| **Trial Court:** | 201st District Court of Travis County, TX<br>Hon. Lora Livingston, Presiding |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ................................................................i

TABLE OF CONTENTS ....................................................................................v

INDEX OF AUTHORITIES.............................................................................. vii

STATEMENT OF THE CASE ..............................................................................x

STATEMENT REGARDING ORAL ARGUMENT ...............................................xi

NOTE REGARDING CITATION..........................................................................xi

STATEMENT OF JURISDICTION ..................................................................... xii

ISSUES PRESENTED .................................................................................... xii

INTRODUCTION.............................................................................................1

STATEMENT OF FACTS ..................................................................................3

STANDARD OF REVIEW..................................................................................8

SUMMARY OF THE ARGUMENT .....................................................................8

ARGUMENT ..................................................................................................9

    I.    The Trial Court Erred in Certifying the Aiding-and-Abetting Claim. .......................................................................................9

        A.    The Named Plaintiffs Are Not Adequate Class Representatives to Pursue an Aiding-and-Abetting Claim Against Statoil. ...............................................9

            1.    Proving adequacy requires proof that class representatives, not their lawyers, have specific knowledge of relevant facts. ............................9

            2.    The Named Plaintiffs did not prove their adequacy to represent any class claims against Statoil. .......................................................12

B. The Named Plaintiffs' Inadequacy Is Further Highlighted by the Deliberate Lack of "Rigorous Analysis" in the Trial Plan. ......................17

II. The Class Definition Fails Because It Contains Members Who Could Not Have Sustained Any Injury in Fact. ........................19

A. A Class Must Be Defined So That All Members Have Standing. ......................20

B. The Class Definition Is So Broad That It Includes Many Members Who Could Not Have Been Injured, As a Matter of Law. ......................21

1. The class definition contains many members with no standing to assert any breach of fiduciary duty claim based on the allegedly unlawful disclosures. ......................21

2. The class definition contains many members with no standing to assert an aiding-and-abetting claim against Statoil......................23

C. Plaintiffs Have Tried to Obscure the Mismatch Created by the Class Definition After Repeatedly Tweaking That Definition......................23

CONCLUSION AND PRAYER ......................25

CERTIFICATE OF SERVICE......................27

CERTIFICATE OF COMPLIANCE ......................29

# INDEX OF AUTHORITIES

| **Case** | **Page(s)** |
|---|---|

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ..........................................................................10

*In re BJ's Wholesale Club, Inc. Shareholders Litig.*,
2013 WL 396202 (Del. Ch. Jan. 31, 2013)...................................................17, 18

*Bowden v. Phillips Petroleum Co.*,
247 S.W.3d 690 (Tex. 2008) ..............................................................................8

*City of Livonia Emps' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...........................................................................11

*DaimlerChrysler Corp. v. Inman*,
252 S.W.3d 299 (Tex. 2008) .............................................................................20

*In re Deepwater Horizon*,
732 F.3d 326 (5th Cir. 2013) .......................................................................20, 25

*In re Enron Corp. Securities Lit.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006)................................................................11

*Ford Motor Co. v. Sheldon*,
22 S.W.3d 444 (Tex. 2000)...............................................................................20

*Forsyth v. Lake LBJ Inv. Corp.*,
903 S.W.2d 146 (Tex. App.—Austin
1995, writ dismissed w.o.j.)..............................................................................10

*Gen. Motors Corp. v. Bloyed*,
916 S.W.2d 949 (Tex. 1996) ..............................................................................9

*Hunt v. Bass*,
664 S.W.2d 323 (Tex. 1984) .............................................................................20

*King v. City of Austin*,
2004 WL 578940 (Tex. App.—Austin
Mar. 25, 2004, no pet.).....................................................................................10

*In re Kosmos Energy Ltd. Securities Litig*,
299 F.R.D. 133 (N.D. Tex. 2014).................................................................10, 11, 12

*M.D. Anderson Cancer Ctr. v. Novak*,
   52 S.W.3d 704 (Tex. 2001)..................................................................20

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ...............................................................18

*Morgan v. Cash*,
   2010 WL 2803746 (Del. Ch. July 16, 2010) ....................................18

*Polaris Indus. v. McDonald*,
   119 S.W.3d 331 (Tex. App.—Tyler
   2003, no pet.) ....................................................................................20

*Riemer v. State*,
   392 S.W.3d 635 (Tex. 2012) ...............................................................8

*In re Rural Metro Corp. Shareholders Litig.*,
   88 A.3d 54 (Del Ch. 2014) ...............................................................17

*S.W. Bell Tel. Co. v. Mktg. on Hold Inc.*,
   308 S.W.3d 909 (Tex. 2010) ........................................................9, 10

*Sw. Ref. Co. v. Bernal*,
   22 S.W.3d 425 (Tex. 2000).....................................................8, 19, 25

*In re Telecomms., Inc.*,
   2003 WL 21543427 (Del. Ch. July 7, 2003) ...................................18

*Tex. Dept. of Mental Health
   & Mental Retardation v. Petty*,
   778 S.W.2d 156 (Tex. App.—Austin
   1989, writ dism'd w.o.j.).....................................................................20

**STATUTES AND RULES**

8 DEL. CODE § 253 ....................................................................................6

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3) ...................................... xii

TEX. R. APP. P. 39.1(d)............................................................................xi

TEX. R. CIV. P. 42(a) ................................................................................9

**OTHER AUTHORITIES**

7A Wright & Miller,
FED. PRAC. AND PRO. § 1766
(3d ed. 2005) ..............................................................................................10

1 H. Newberg & A. Conte,
NEWBERG ON CLASS ACTIONS
§ 3:50 (5th ed. 2015) ..................................................................................9

## STATEMENT OF THE CASE

*Nature of the Case*  Class certification appeal. **APP. 1** (Order).

This class action was brought by former shareholders of Brigham Exploration Company ("Brigham") in response to an offer by Statoil ASA ("Statoil") to buy Brigham. CR4-55. The principal defendants are Brigham and the Brigham directors who agreed to accept Statoil's offer; Plaintiffs allege that the Brigham Defendants sold cheap, thereby injuring Brigham's shareholders. CR5-7.

In addition, Plaintiffs sued Statoil and a related entity (Fargo Acquisition, Inc.)[1] for the successful acquisition. Plaintiffs allege that Statoil struck too good a deal for itself and in doing so aided and abetted a breach of the Brigham directors' fiduciary duties. *Id.*

*Course of Proceedings*  During discovery, none of the class representatives was able to state a viable basis for the claims against Statoil; some did not even know they were suing Statoil. Nevertheless, Judge Lora Livingston found them all to be adequate class representatives and certified a class action. **APP. 1, APP. 3**.

After a previous interlocutory appeal in which this Court reversed class certification for lack of a valid trial plan, **APP. 2**, Judge Livingston signed a new order certifying the class and adopted a trial plan proposed by Plaintiffs that barely discusses Statoil. **APP. 1, APP. 3**.

*Trial Court*  Honorable Lora Livingston, presiding
201st Judicial District Court, Travis County, Texas

*Disposition Below*  The trial court signed an order granting class certification on April 9, 2015.

---

[1] Fargo, a Delaware corporation wholly owned by Statoil, was formed solely to effectuate Brigham's acquisition. "Statoil" is used to refer to both Statoil and its subsidiary Fargo.

## STATEMENT REGARDING ORAL ARGUMENT

Statoil respectfully requests oral argument. This is the second appeal of a class certification order in this action; the first certification order was reversed. The district court's decision involves important questions regarding the standards for adequacy of a class representative and for standing in a securities class action. Therefore, oral argument will likely aid the Court. TEX. R. APP. P. 39.1(d).

## NOTE REGARDING CITATION

The record citations are to the Reporter's Record (RR), the Clerk's Record (CR), the first Supplemental Clerk's Record (1SCR), second Supplemental Clerk's Record (2SCR), and the third Supplemental Clerk's Record (3SCR).

The Clerk's Record also includes exhibits the district clerk filed by hand. Although part of the Clerk's Record, they are not paginated. These documents were initially filed with the district court under seal, but have since been unsealed. **APP. 3** contains "Exhibit 1" filed with the Court on June 5, 2015, which includes "Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims." **APP. 4** contains "Exhibit 1" filed with the Court on August 14, 2015, which includes "Plaintiffs' Response to Defendants' Joint Opposition to Class Certification and Plaintiffs' Proposed Amended Plan for Trial of the Class Claims."

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this interlocutory appeal from an order granting class certification. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3).

## ISSUES PRESENTED

In addition to the grounds for relief set forth by the Brigham Defendants, Statoil files this separate brief to develop two issues unique to Statoil and to underscore an issue of particular significance to class-action jurisprudence:

I.      Did the trial court err in certifying a class on the aiding-and-abetting claims against Statoil? Specifically:

    A.      Did the trial court err in finding the Named Plaintiffs adequate to pursue aiding-and-abetting claims against Statoil where none of them knows any facts supporting the Plaintiffs' allegation that Statoil "knowingly participated" in the Brigham Defendants' alleged breach of fiduciary duties?

    B.      Did the trial court err in certifying an aiding-and-abetting claim against Statoil based on a trial plan that is facially defective and betrays a lack of rigorous analysis for that claim?

II.     Did the trial court err in certifying a class based on a class definition that includes class members who could not have sustained the injuries alleged, depriving them of standing to participate in the class action?

# INTRODUCTION

This class action was filed within hours of the announcement that Statoil had made an all-cash tender offer to purchase all Brigham shares at a price significantly above the market price. The principal claims are against the Brigham directors who approved the sale. Statoil, the buyer, was dragged into this lawsuit through a fanciful aiding-and-abetting theory. Statoil has been subjected to sustained, expensive litigation simply because it made a cash offer to buy another company on terms that it viewed as a good deal for its shareholders (not to mention terms that the vast majority of Brigham's shareholders accepted and that the market itself viewed favorably during the entire time the tender offer was pending).

Everyone involved in the underlying merger benefitted: those who accepted Statoil's tender offer, those who traded their shares to capture the benefit that Statoil's offer created, and even those few who held out until the tender offer was effected through a short-form merger. Nevertheless, Plaintiffs' counsel sprinted to the courthouse to file this lawsuit the instant the merger was announced.

Whatever one thinks of this dubious strategy as to the Brigham Defendants, the seven Named Plaintiffs are inadequate to represent a class against Statoil. They have offered no factual basis for suing Statoil; indeed, some did not even know that they had sued Statoil or who Statoil is. Of the few Named Plaintiffs who could even identify Statoil, the only basis they could offer for the decision to sue Statoil was this one: "I think they should have paid a higher price." 3SCR85.

1

This claim is outlandish. Brigham shareholders are attempting to sue Statoil for negotiating a merger on terms that they allege were too favorable to Statoil. Such a claim is at odds with the very notion of a free market; securities litigation cannot be based on one company's failure to look out for another's shareholders. If this theory were valid, it would mean that the directors of the acquiring company in every merger are obligated to breach fiduciary duties to their own shareholders to ensure that shareholders on the other side of the deal are satisfied. It would also mean that a company must expose itself to the risk of a derivative suit by its own shareholders to avoid "aiding-and-abetting" liability. This position is nonsensical. It is unsurprising, therefore, that the Named Plaintiffs cannot explain their suit against Statoil and the trial plan regarding Statoil is facially flawed.

In addition, the class definition—which has been retooled multiple times—remains completely out of joint with the alleged injury. The class is now defined as persons who held Brigham shares on October 17, 2011, the day the tender offer was announced. Yet the allegedly inadequate disclosures regarding this offer were not made until 11 days later. By that time, a massive volume of Brigham shares had been traded—well in excess of the total number of outstanding shares.[2] Thus, the class definition indisputably includes a vast number of shareholders who could not have been injured by the disclosures, as a matter of law. This flaw is fatal.

---

[2] This trading frenzy is explained by Statoil's offer to pay $36.50 per share for Brigham shares, when the day before the announcement the stock had closed at only $30.90 per share. CR148.

***Brigham approaches Statoil; eventually, these unrelated companies
strike a win-win merger deal for their shareholders***

Statoil began as Norway's state oil company over four decades ago.  Today, it is a publicly traded energy company with a presence in over thirty countries. The company is listed on both the New York and Oslo stock exchanges.[3]

Brigham too was a publicly traded company until Statoil acquired it in 2011 as the result of an all-cash tender offer in response to which 92.6% of Brigham's shares were voluntarily tendered.  CR1941.  The acquisition resulted from inquiries that Brigham had initiated and followed months of arms-length negotiations. CR1416; CR1418-28.

Nearly a year after Brigham approached Statoil and other potential buyers, Statoil's board approved a proposal to Brigham.  CR1420.  Brigham countered.  *Id.* Initially, neither side budged.  But given the time and energy both had expended on the potential deal, they agreed to continue negotiating.  *Id.*

After further negotiations, Statoil increased its offer to $36.50 per share. CR1424.  Brigham's board later unanimously approved that amount.  CR1426. Thus, on October 17, 2011, Statoil and Brigham executed a merger agreement. CR1428.  That same day, the basic terms of the deal were made public.  CR27.

---

[3] *See* http://www.statoil.com/en/About/History/Pages/default3.aspx (September 25, 2015).

### *Statoil's tender offer boosts Brigham's share price*

Statoil's tender offer represented a premium of more than 18% over the highest price for Brigham shares during the 30 days before the deal was announced and a 33% premium over the average market price of Brigham shares during that same period. CR184-85. The $36.50 offer was close to Brigham's historic high[4] and far above its historic low of less than $1 per share. CR143-216.

After Statoil's offer was announced, Brigham's stock price shot up in very active trading. The first day after the announcement, 62 million outstanding shares (a number exceeding 50% of the outstanding shares) were sold on the open market; and the closing per-share price that day was $36.40—just 10 cents below the tender offer per-share price. CR185. Between October 17 and October 28, 2011, 134 million Brigham shares were exchanged on the open market at similar prices. *Id.* By the time the merger was effected on December 8, 2011, 262 million shares had been traded at similar prices. *Id.*

### *Plaintiffs file suit, anticipating an injury that never occurs*

On October 17, 2011—the very day that Statoil's tender offer was announced and 11 days before the tender offer even opened—a lawsuit was filed that became the template for this class action. CR221-38. That first lawsuit was filed on behalf of Raymond Boytim, one of the Named Plaintiffs. *Id.*

---

[4] Brigham's shares were largely tied to the price of oil. The all-time closing price high of $37.50 lasted for less than a week, when oil prices spiked to over $110 per barrel. CR182; CR194. Since then, of course, oil prices have plummeted.

4

Astoundingly, Boytim testified that he did not decide to file suit until some time later, after he had read about "all of these law firms that were filing suit." 3SCR112. When asked point blank about the lawsuit bearing his name that was, indisputably, filed on October 17, 2011, Boytim said: "***If it -- if it was, I just wasn't aware of it.***" *Id.* (emphasis added).

The lawsuit filed in Boytim's name sought to enjoin the Statoil tender offer on the ground that Brigham's board had failed to disclose material information to Brigham shareholders. CR233-34. More specifically, it alleged that Brigham board members had failed "to disclose material financial information" related to the merger "to enable Brigham's stockholders to cast informed votes on the Proposed Transaction." CR234; CR235. And it included a claim against Statoil for allegedly aiding and abetting the Brigham board's purported failure to disclose. CR235-36. But at the time, the tender-offer disclosures did not even exist yet— they were made later, in required SEC filings. CR1472.

Other lawsuits quickly followed. Between the October 17 announcement and the October 28 disclosures, nine other putative class actions were filed alleging similar claims and attacking disclosures that had not yet been made. CR1461-63.

Finally, on October 28, 2011 (11 days after the first lawsuit had been filed) the required disclosures were filed with the SEC. CR1391-1530. These are the allegedly defective disclosures subsequently identified in the Named Plaintiffs' class action trial plan. *See* **APP. 3**, Trial Plan at 4.

5

*The vast majority of Brigham shareholders embrace the tender offer*

The day of the disclosures—October 28, 2011—the tender offer opened. The tender offer was successful: 92.6% of all shares were voluntarily tendered. CR1941. Because Statoil acquired more than 90% of Brigham's outstanding shares during the first-step tender offer, it was entitled to effect a "short-form merger" that did not require the approval of Brigham's shareholders. 8 DEL. CODE § 253. Using this procedure, each remaining share of Brigham stock was converted into a right to receive $36.50 per share on December 8, 2011. CR1942.

But even as shareholders were voting with their shares in favor of the deal, Plaintiffs sought to enjoin the merger. On November 22, 2011, Judge John Dietz held a hearing and denied Plaintiffs' request for a temporary injunction. **APP. 5**. Thereafter, Plaintiffs sought class certification and damages based on allegations that individual board members had breached fiduciary duties owed to Brigham shareholders and that Statoil and Brigham itself had aided and abetted that breach. CR370-400; CR678-707.

Well after the merger had been concluded, and after evidentiary hearings on class certification, Judge Lora Livingston granted Plaintiffs' motion to certify a class defined as "all holders of common stock of Brigham Exploration Company as of October 17, 2011." CR1089; CR1190-95. The class action trial plan devoted just three sentences to the aiding-and-abetting claim against Statoil. CR1150.

6

*After the class is decertified, Plaintiffs obtain the same result on remand*

On appeal, this Court held that the trial court had abused its discretion by certifying a class without an adequate trial plan. **APP. 2**. The Court did not need to reach any other issues, leaving for another day serious arguments that Plaintiffs had failed to satisfy the requirements of Rule 42—such as adequacy. *Id.* at n.2.

On remand, Plaintiffs again proposed a class defined as "all holders of common stock of Brigham Exploration Company as of October 17, 2011." 3SCR664. Plaintiffs also proposed an amended trial plan, which was unchanged with respect to the claim against Statoil. CR92. After Statoil objected to the absence of any law relevant to the aiding-and-abetting claim, Plaintiffs submitted a second amended trial plan that purported to address Statoil's concerns. **APP. 3**. That version, however, still only devotes one paragraph to the claim against Statoil and merely recites the pleading standard. *Id.*, Trial Plan at 4-5. The Defendants again objected to certification and to the proposed trial plan on multiple grounds. CR119-216; 3SCR3-652.

Judge Livingston signed a second class certification order, adopting and incorporating Plaintiffs' second amended class action trial plan. **APP. 1**; **APP. 3**. The court authorized the seven Named Plaintiffs to serve as class representatives— although only four had attended the initial class certification hearing and Plaintiffs had presented no evidence that any Named Plaintiff knew facts relevant to the claim against Statoil. CR656-76; CR1589-1859. Statoil appealed again.

7

## STANDARD OF REVIEW

A trial court exercises discretion in certifying a class action, but must do so subject to the requirements of Rule 42; "compliance with class action requirements must be demonstrated rather than presumed." *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008). The Texas Supreme Court has rejected a "certify now and worry later" view of class certification. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). The court must perform "a 'rigorous analysis' before ruling on class certification" in order to assure that Rule 42 is satisfied. *Id.*; *see also Riemer v. State*, 392 S.W.3d 635, 639 (Tex. 2012) (same).

## SUMMARY OF THE ARGUMENT

Statoil respectfully adopts the issues presented and the arguments developed in the Brigham Defendants' brief.

In addition, this brief focuses on two arguments of importance to Statoil. First, the Named Plaintiffs are not adequate representatives for the class claims against Statoil because none of them has any knowledge of facts relevant to the aiding-and-abetting claim. Second, in attempting to cover up the adequacy defect, the trial plan is facially defective and betrays a fatal lack of rigorous analysis.

Finally, as currently defined, the class contains numerous shareholders who could not have sustained the injuries alleged because the conduct in question did not occur until *after* the inception of the class. Thus, many class members (perhaps most) lack standing to bring any of the asserted claims against Statoil.

8

**ARGUMENT**

## I. The Trial Court Erred in Certifying the Aiding-and-Abetting Claim.

### A. The Named Plaintiffs Are Not Adequate Class Representatives to Pursue an Aiding-and-Abetting Claim Against Statoil.

Regardless of the viability of the class certification order with respect to the Brigham Defendants, there is no basis for class certification with respect to Statoil. The Named Plaintiffs failed to show that they are adequate class representatives with respect to Statoil; in fact, their testimony conclusively proved otherwise.

#### 1. Proving adequacy requires proof that class representatives, not their lawyers, have specific knowledge of relevant facts.

Rule 42(a) requires that class representatives "fairly and adequately protect the interests of the class." TEX. R. CIV. P. 42(a). This "adequacy" requirement implicates paramount due process concerns. *See* 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 3:50 at 408 (5th ed. 2015); *see also S.W. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 919 (Tex. 2010) (explaining that class action requirements "are not only procedural safeguards but are based in the Due Process clauses of the United States and Texas Constitutions"). Importantly, these concerns are not satisfied unless both "class representatives and their counsel are adequate representatives" for the class. *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1996). When a district court ignores this requirement, reviewing courts "have no assurance that the district court fully appreciated the scope and nature of the interests at stake." *Id.*

9

Thus, class representatives must produce "actual, credible evidence" that they "are informed, able individuals, who are themselves—not the lawyers—actually directing the litigation." *In re Kosmos Energy Ltd. Securities Litig*, 299 F.R.D. 133, 145 (N.D. Tex. 2014)).[5] A class action cannot be lawyer-driven: "the class representative is 'not simply lending [his or her] name [ ] to a suit controlled entirely by the class attorney.'" *Mktg. on Hold*, 308 S.W.3d at 927 (quoting 7A Wright & Miller, FED. PRAC. AND PRO. § 1766 (3d ed. 2005)).

At a bare minimum, class representatives must establish that they possess personal knowledge of the facts underlying their claims—and must know who they are pursuing those claims against, and why. *See Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 152 (Tex. App.—Austin 1995, writ dismissed w.o.j.) (quoting federal authority for the principle that an adequate representative is "one who will check the otherwise unfettered discretion of counsel in prosecuting the suit and who will provide his personal knowledge of the facts underlying the complaint"). These adequacy requirements are identical in state and federal court.[6]

---

[5] *Kosmos* was decided under the federal analogue to Rule 42(a), but it is especially persuasive because it involves an attempt to certify a class pursued by the same counsel appointed as lead counsel here, in reliance on evidentiary submissions markedly similar to those proffered here. After a rigorous, well substantiated analysis, the class representatives were deemed inadequate. *See Kosmos*, 299 F.R.D. at 136-37.

[6] *See King v. City of Austin*, 2004 WL 578940, at *4 (Tex. App.—Austin Mar. 25, 2004, no pet.) (mem. op.) (named plaintiff who had been "recruited by counsel to be a class representative" and "did not do independent investigation to assist his attorneys" was held to be inadequate); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001) (explaining that class representative is required "to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation").

Applying these adequacy standards, class certification should be denied "where the representative lacks knowledge or a basic understanding of what the suit is about" or the representative is unable to "identify certain named parties or the roles the defendants played in the alleged fraud.'" *Kosmos*, 299 F.R.D. at 146 (quoting *In re Enron Corp. Securities Lit.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006)). A class representative's "inability to articulate any underlying case specifics 'beyond conclusory allegations of fraud'" is a telltale sign of inadequacy. *Id.*

*Kosmos* offers an apt benchmark for this case. The affidavit in *Kosmos*, which was sponsored by the same class counsel as this case, was aptly described as "little more than formulaic, boilerplate assertions." *Id.* It included the following "conclusory pronouncements":

- "I have participated in the Plan's decision-making with respect to litigation matters, and have participated in supervising outside legal counsel in the Plan's pending litigation."

- "The Plan has reviewed and monitored the progress of this litigation and has actively participated in its prosecution. For example, the Plan has" "received and reviewed" reports and correspondence, "supervised" discovery preservation, "reviewed pleadings" and "consulted with lawyers."

*Id.* Such conclusory statements fail to satisfy the adequacy requirement. *Id.*

Class counsel in this case have an unfortunate history of aggressive tactics that abuse the class-action device and devalue its important purposes. *See, e.g.*, *City of Livonia Emps' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013) (Posner, J.) (citing cases). This case follows the same pattern.

11

### 2. The Named Plaintiffs did not prove their adequacy to represent any class claims against Statoil.

Plaintiffs presumed (incorrectly) that they could rely on written affidavits, comprised entirely of boilerplate assertions, to prove that their class representatives were adequate. It is telling that the affidavit that was found wanting in *Kosmos*, reproduced in its entirety at footnote 64 of that opinion, was far more detailed than most of the Named Plaintiffs' affidavits in this case. The affidavits do little more than assert that each affiant had "actively monitored the litigation" and planned to "direct class counsel." CR656-76. Most of the Named Plaintiffs' affidavits do not even mention Statoil, and none of the affidavits suggests any factual basis for the aiding-and-abetting claim asserted against Statoil. *See id.* The affidavits are not "actual, credible evidence" that the affiants are "informed, able individuals, who are themselves—not the lawyers—actually directing the litigation." *Kosmos*, 299 F.R.D. at 141. They are legally insufficient on their face.

Additionally, the Named Plaintiffs' deposition testimony demonstrated conclusively that they had no knowledge to support an aiding-and-abetting claim— most did not even know who Statoil is or why it was sued:

***Myrna Goodman of the Edward J. Goodman Trust***

Q: What is Statoil ASA?

A: Don't know.

Q: Do you know why Statoil ASA is being sued?

12

A: No.

….

Q: What about Statoil, did you do any independent investigation regarding Statoil?

A: No.

Q: Did you look online onto Statoil's website?

A: No.

Q: Do you know what type of company Statoil is?

A: No, I do not.

3SCR32; 3SCR 37-38.

### *Jeffery Whalen*

Q: What are you alleging that Statoil did wrong in connection with the merger of the Brigham Exploration and the share price?

A: That I can't answer.

3SCR45.

### *Hugh Duncan*

Q: Mr. Duncan, are you suing Statoil in this case?

A: Am I what?

Q: Are you suing Statoil?
....
A: I think the pleadings speak for themselves.

Q: Do you know whether you've sued Statoil or not?

A: Pardon me?

Q: Do you know, as we sit here, whether you are suing Statoil?

13

A: I believe we are, aren't we?

...

Q: Mr. Duncan, why are you suing Statoil?

...

A: I'll claim the privilege.

3SCR52-53 (objections omitted).

### *Walter Schwimmer*

Q: Why are you suing Statoil? . . . .  Dr. Schwimmer, if you have an independent understanding of why you sued Statoil other than the outcome of discussion with your attorneys, you can respond.

A: I'm sorry. I don't have any information other than that which has been communicated to me by our -- my attorneys.

3SCR60-61 (objection omitted).

### *Howard Weissberg*

Q: My last question was, have you sued Statoil?

A: No.

3SCR68.

### *Robert Fioravanti*

Q:  Why are you suing Statoil?

A:  Because they didn't – I believe they did not pay a fair value of the company's worth.

Q:  Do you believe they wronged you?

A:  I believe they should have paid more for the Brigham stock.

Q:  Is that it? Is that the only thing you think they did wrong?

A:  I think they should have paid a higher price.

14

Q:  Anything else?

A:  No.

3SCR84-85 (objections omitted).

### *Raymond Boytim*

Q: What about Statoil, what are you alleging Statoil did wrong?

A: Statoil?

Q: Statoil.

A: That's a tough one. . . .  All the parties here had to be closely involved to the point that they all had some responsibility with what happened, the merger of the companies.  And if the Brigham side of the merger was flawed in some way, I feel the other side has got to be flawed, because they came together so late and so quickly, no prolonged negotiations, no long discussions.  It was just bingo.  And --- and there's no explanation for it.  It just happened.  And I don't like things that just happen.  You know, a deal – a deal is made.  And I – personally I would like to know how they really got together and decided on $36.50.  And anybody that was a party to agreeing it is listed on this.

Q:  And are you contending that Statoil did something to injure you as a shareholder of Brigham Exploration? . . . Are you contending that Statoil injured you as a shareholder of Brigham Exploration?  When you said their processes must have been flawed, are you suggesting that they are responsible for some sort of injury to you?

A:  I don't know enough about it to make those allegations really.  It is implied.  But I – I stand by what I said.  They were involved; they were a party to it.

3SCR122 (objections omitted).

In short, none of the Named Plaintiffs stated a viable basis for suing Statoil.

15

Only four of the Named Plaintiffs attended the class certification hearing. CR1589-1859.[7] Two of the four tried to rehabilitate their testimony about Statoil, but they were unable to shed any real light on why class counsel had sued Statoil.

First, Whalen testified that "Statoil is the other entity in the merger, and if -- I think that the share price was too low for the acquisition cost, then they would be liable for any damages because Brigham Oil is now owned entirely by Statoil." CR1737-38. But Whalen also admitted: "I just made that up right now." *Id.*

Second, Weissberg similarly testified that the Plaintiffs had sued Statoil "because Statoil is the company that bought Brigham. So, consequently, okay, they are the ones who now own Brigham and they are the ones responsible for Brigham, okay?" CR1679-80. "The attorneys decide who to sue." CR1680.

In other words, the two Named Plaintiffs who testified at the hearing alleged that Statoil is liable for the Brigham Defendants' actions as the successor company (which is false), not that it is responsible for any wrongdoing in the merger itself. Indeed, their testimony demonstrated not only that they lacked any factual basis for suing Statoil, but that they did not even understand the theory against Statoil.

This record includes no evidence that will satisfy the adequacy requirement. Instead, it conclusively demonstrates the Named Plaintiffs' ***inadequacy***.

---

[7] Boytim was not among them. Perhaps he did not attend the hearing because his deposition had revealed the awkward fact that he was not even aware that class counsel had filed a lawsuit in his name on October 17, 2011. He testified that he had not sought a lawyer until after several other lawsuits had been filed. 3SCR112.

**B.    The Named Plaintiffs' Inadequacy Is Further Highlighted by the Deliberate Lack of "Rigorous Analysis" in the Trial Plan.**

The sole claim asserted against Statoil is an aiding-and-abetting claim, which would require the Plaintiffs to prove Statoil's "knowing participation" in the Brigham board members' alleged breaches of fiduciary duty. The trial plan fails to account for this critical element, allowing class certification on an invalid theory.

Proving the point, Plaintiffs' trial plan is just a one-paragraph recitation of the pleading standard for an aiding-and-abetting claim. **APP. 3**, Trial Plan at 4-5. It ignores the elements Plaintiffs must prove at trial—because they cannot allege the facts required to prove the claim. To prove Statoil knowingly participated in a breach of fiduciary duty by Brigham's board, Plaintiffs must prove that Statoil:

(1) "directly sought to induce the breach of fiduciary duty";

(2) "create[d] or exploit[ed] conflicts of interest in [Brigham's] board,"

(3) "used knowledge of the breach to gain a bargaining advantage" in negotiations with Brigham's board, or

(4) knew the "terms of the transaction [were] so egregious or the magnitude of the side deals [] so excessive as to be inherently wrongful."

*In re BJ's Wholesale Club, Inc. Shareholders Litig.*, 2013 WL 396202, at *14 (Del. Ch. Jan. 31, 2013); *see also In re Rural Metro Corp. Shareholders Litig*., 88 A.3d 54, 99 (Del Ch. 2014) (to prove aiding or abetting a breach of fiduciary duty, the plaintiff must establish that "the third party, for improper motives of its own, misleads the directors into breaching their duty of care").

17

Because Plaintiffs cannot establish these factors, the trial plan omits them. **APP. 3**, Trial Plan at 4-5. Instead, it assumes that Plaintiffs could prevail based on their allegation that Statoil bought Brigham too cheaply. But under Delaware law, attempting "to reduce [Brigham's] sale price through arm's length negotiations" and "hard bargaining" is insufficient to state a claim as a matter of law. *In re BJ's*, 2013 WL 396202 at *14; *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). Even if Brigham was "worth substantially more" than the purchase price, that fact does "not provide a reasonable inference" that Statoil "conspired with the Board to purchase the Company at a discounted price." *In re BJ's*, 2013 WL 396202 at *15.

Nor could Plaintiffs prevail by proving that Statoil sought to retain members of the Brigham management team; "retaining management is a routine occurrence for the obvious reason that an acquiror often wants to keep existing management in order to ensure that the acquired assets continue to be managed optimally." *Morgan v. Cash*, 2010 WL 2803746, at *5 (Del. Ch. July 16, 2010).

Thus, Plaintiffs' allegations do not state a cognizable claim against Statoil. In Delaware state court, this aiding-and-abetting claim against Statoil would have been dismissed on the pleadings. *E.g.*, *Malpiede*, 780 A.2d at 1098; *In re BJ's,* 2013 WL 396202, at *14; *In re Telecomms., Inc.*, 2003 WL 21543427, at *2-3 (Del. Ch. July 7, 2003). Statoil's offer to buy Brigham for the best price Statoil could obtain through arms-length negotiations is simply not a basis for a legitimate aiding-and-abetting claim.

18

The Texas Supreme Court mandates that, before certifying a class action, trial courts must undertake a "rigorous analysis" of the "claims ... relevant facts, and applicable substantive law" in order to "make a meaningful determination of the certification issues." *Bernal*, 22 S.W.3d at 435. That rigorous analysis must be reflected in the trial plan. *Id.* This trial plan falls woefully short of that standard, because none of the Named Plaintiffs has any factual basis for asserting that Statoil "knowingly participated" in any breach of fiduciary duty by the Brigham board. **APP. 3**, Trial Plan at 4-5. This claim is a naked attempt to penalize an acquiring company for trying to make a good deal, which is nothing but a toll on capitalism. By certifying the claim for class treatment, the trial plan is fatally defective.

Taken together, the inadequacy of the class representatives and the invalidity of the trial plan (which was deliberately constructed to cover up that inadequacy) reveals that the lawyers, and not the class representatives, are driving this lawsuit. The trial court abused its discretion by certifying a class against Statoil.

## II. The Class Definition Fails Because It Contains Members Who Could Not Have Sustained Any Injury in Fact.

As stated above, Statoil incorporates the Brigham Defendants' arguments, which demonstrate additional reasons why the entire class should be decertified. One of those arguments merits particular emphasis because it is so foundational: the class has been defined in such a way that it includes numerous individuals who do not have standing to sue because they could not have sustained any injury.

19

## A. A Class Must Be Defined So That All Members Have Standing.

Standing is the first prerequisite to maintaining a legal action. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Class actions are no exception to that rule. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001) (explaining that a plaintiff in a class action must satisfy the threshold requirement of standing); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) (stating that "[a] court has no jurisdiction over a claim made by a plaintiff without standing to assert it"); *Tex. Dept. of Mental Health & Mental Retardation v. Petty*, 778 S.W.2d 156, 163-67 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (finding plaintiff that lacked standing was not a competent class representative).

Because standing is jurisdictional, a class definition cannot include any claimants who lack standing. *See In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) (citing multiple federal authorities). In other words, a class must "be defined in such a way that ***anyone*** within it would have standing" with respect to the claims asserted. *Id.* (emphasis added). Federal and state law are consistent in this area, so "federal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions." *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000); *see also Polaris Indus. v. McDonald*, 119 S.W.3d 331, 338 (Tex. App.—Tyler 2003, no pet.) (applying this principle to standing). Therefore, the Fifth Circuit's recent *Deepwater Horizon* decision, which is directly on point, should be controlling in this case.

20

**B.** **The Class Definition Is So Broad That It Includes Many Members Who Could Not Have Been Injured, As a Matter of Law.**

This class is defined to include "all holders of Brigham common stock as of October 17, 2011." CR3167. Many members of that class do not have standing to bring any claims based on the disclosures that Plaintiffs allege injured them. Thus, under the rule of *Deepwater Horizon*, the class definition is defective.

### 1. The class definition contains many members with no standing to assert any breach of fiduciary duty claim based on the allegedly unlawful disclosures.

According to the trial plan, this case turns on an inadequate disclosure theory involving disclosures that were made on October 28, 2011:

> plaintiffs contend that the Individual Defendants disseminated a Schedule 14D-9 and tender offer statement on Schedule TO, filed with the Securities and Exchange Commission on ***October 28, 2011***, which was false and misleading and failed to disclose all material information to Brigham shareholders in connection with the tender offer from Statoil.

APP. **3**, Trial Plan at 4 (emphasis added). As Plaintiffs put it in their live petition:

> The Individual Defendants breached their fiduciary duties of good faith, loyalty, due care and candor ... by failing to: ... (f) disclose all material information concerning the transaction to enable Brigham's stockholders to, on an informed basis, tender their shares for the Acquisition. . . . Such breaches of fiduciary duties could not and would not have occurred but for the conduct of ... Statoil, which, therefore, aided and abetted such breaches via entering into the Merger Agreement.

CR47. Thus, the classwide liability theory turns on legally-required disclosures that were not made until October 28, 2011.

21

Plaintiffs have conceded that, if the Schedule 14D-9 and related tender offer statement on Schedule TO did not contain material non-disclosures or omissions, their duty-of-candor claims fail. **APP. 4** at 7 ("If plaintiffs do not establish that shareholders were misled [as alleged], plaintiffs' claims based on the breach of the duty of candor fail and defendants are entitled to judgment on that claim"). Thus, the injury the class members allege arises from disclosure statements that were not made until *after* the date of the class definition: no class member could have been injured by those disclosures until at least 11 days later. CR1391-1530.

Moreover, during that 11-day period, Brigham stock was traded on the open market so extensively that the volume exceeded 100% of Brigham's total shares.[8] This tremendous trading activity between October 17, 2011 (when the tender offer was announced) and October 28, 2011 (when the disclosures were made and the tender offer period opened) conclusively demonstrates that many, if not most, Brigham shareholders on October 17, 2011 no longer owned that stock when the critical disclosures were made on October 28, 2011.

As defined, many members of the class could not have a justiciable injury arising from the challenged disclosures. CR45-47. Because many class members have no standing to sue any defendant for an injury arising from those disclosures, the class definition constitutes an abuse of discretion.

---

[8] On October 17, 2011, approximately 117 million Brigham shares were outstanding. CR3164. From October 17 to October 28, 134 million Brigham shares exchanged hands. CR185-86.

2. **The class definition contains many members with no standing to assert an aiding-and-abetting claim against Statoil.**

The only claim asserted against Statoil is an aiding-and-abetting claim. CR46-48. It assumes (at least in part) that the individual Brigham Defendants made misleading disclosures regarding the Statoil tender offer. *See, e.g.*, CR47 (alleging that Statoil and Brigham aided and abetted "the Individual Defendants' breaches of fiduciary duties" and "damaged" the class members "in that they have been prevented from obtaining a fair price for their shares and ***were not able to tender their shares on an informed basis***") (emphasis added).

Because most members of the class lack individual standing to assert the breach of the duty of candor/disclosure claim, they likewise lack standing to assert a claim that Statoil aided and abetted such a breach. Class members who owned Brigham shares on October 17, 2011 and sold them before the relevant disclosures were made on October 28 cannot claim any injury fairly traceable to the allegation that Statoil aided and abetted a fiduciary breach with respect to those disclosures. Thus, with respect to Statoil, the class definition constitutes an abuse of discretion.

C. **Plaintiffs Have Tried to Obscure the Mismatch Created by the Class Definition After Repeatedly Tweaking That Definition.**

The current class definition, which has not changed since the first appeal, was Plaintiffs' third attempt to define the scope of their class. The evolution of the class definition exposes the reality of their case, and it is not pretty.

23

At one point, the class included "[a]ll holders of Brigham common stock as of 12/8/11 who held their shares from consummation of the acquisition of Brigham by Statoil at a price of $36.50 per share." CR128. But Plaintiffs abandoned this definition tethered to December 8 (the date when the tender offer closed), presumably because it would contain very few members. CR185-86; CR1941. The frenetic trading that occurred between the announcement of the tender offer and the date the tender offer closed indicates that very few Brigham stockholders (1) owned Brigham stock on October 17, 2011, (2) held that stock until after the October 28 disclosures, and (3) refused to tender their shares by December 8:



As this graphic illustrates, a class limited to the handful of Brigham shareholders who might claim actual injuries from the disclosures in question would be tiny. Thus, class counsel gerrymandered the class definition to make it more profitable.

24

The district court should have recognized this ploy and denied certification. Its duty to engage in a "rigorous analysis" of the class certification criteria, *Bernal*, 22 S.W.3d at 435, included a duty to determine "whether broad swaths of the proposed class would have standing." *Deepwater Horizon*, 732 F.3d at 343 n.11. Because this class is "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct," under the *Deepwater Horizon* test that Texas law should adopt, "the class is defined too broadly to permit certification." *Id.* at 342 n.9 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)).

Because the district court did not undertake this rigorous analysis, it certified a class containing many members without standing to assert *any* disclosure claim, much less the utterly speculative aiding-and-abetting claim asserted against Statoil. The district court's failure to police Plaintiffs' transparent attempt to obscure their numerosity problem with an overbroad class definition that is logically inconsistent with the class liability theory was an abuse of discretion.

## CONCLUSION AND PRAYER

For these reasons as well as those set forth in the Brigham Defendants' brief, Statoil asks that the trial court be reversed, the class be decertified, and the action be remanded for further proceedings consistent with this Court's opinion.

25

Respectfully submitted,

BECK REDDEN LLP

*/s/ Russell S. Post*

Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Fields Alexander
State Bar No. 00783528
falexander@beckredden.com
Parth S. Gejji
State Bar No. 24087575
pgejji@beckredden.com
1221 McKinney, Suite 4500
Houston, TX  77010
(713) 951-3700
(713) 951-3720 (Fax)

Gretchen S. Sween
State Bar No. 24041996
gsween@beckredden.com
Christopher R. Cowan
State Bar No. 24084975
ccowan@beckredden.com
BECK REDDEN LLP
515 Congress Avenue, Suite 1900
Austin, TX  78701
(512) 708-1000
(512) 708-1002 (Fax)

***Counsel for Appellants,***
***Statoil ASA and Fargo Acquisition, Inc.***

26

**CERTIFICATE OF SERVICE**

In accordance with the Texas Rules of Appellate Procedure, I hereby certify that on September 28, 2015, a true and correct copy of the above and foregoing Brief of Appellants Statoil ASA and Fargo Acquisition, Inc. was properly forwarded to all counsel of record, by e-file and/or email, addressed as follows:

### *Class Counsel for Appellees*

ROBBINS GELLER RUDMAN
  & DOWD LLP
Darren J. Robbins
Randall J. Baron
David T. Wissbroecker
Steven M. Jodlowski
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
randyb@rgrdlaw.com
dwissbroecker@rgrdlaw.com
sjodlowski@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
Samuel H. Rudman
Mark S. Reich
Michael G. Capeci
58 South Service Road, Suite 200
Melville, NY 11747
srudman@rgrdlaw.com
mreich@rgrdlaw.com
mcapei@rgrdlaw.com

### *Liaison Counsel for Appellees*

BOULETTE & GOLDEN LLP
Michael D. Marin
2801 Via Fortuna, Suite 530
Austin, Texas 78746
mmarin@boulettegolden.com

### *Additional Counsel for Appellees*

KENDALL LAW GROUP, LLP
Joe Kendall
Daniel Hill
Jamie J. McKey
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
jkendall@kendalllawgroup.com
dhill@kendalllawgroup.com
jmckey@kendalllawgroup.com

THE BRISCOE LAW FIRM, PLLC
Willie C. Briscoe
The Preston Commons
8150 N. Central Expressway, Suite 1575
Dallas, Texas 75206
wbriscoe@thebriscoelawfirm.com

27

DUNNAM & DUNNAM L.L.P.
Hamilton P. Lindley
4125 W. Waco Drive (76710)
P.O. Box 8418
Waco, Texas 76714
hlindley@dunnamlaw.com

LEVI & KORSINSKY LLP
Shane T. Rowley
30 Broad St., 24th Floor
New York, NY 10004
srowley@zlk.com

THE WEISER LAW FIRM, P.C.
Patricia C. Weiser
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
pw@weiserlawfirm.com
jmf@weiserlawfirm.com

THE REDDELL FIRM PLLC
Kelly N. Reddell
100 Highland Park Village, Suite 200
Dallas, Texas  75025
kelly@reddell-law.com

BRODSKY & SMITH LLC
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 602
Bala Cynwyd, Pennsylvania 19004
esmith@brodsky-smith.com
mackerman@brodsky-smith.com

KOHN, SWIFT & GRAF, P.C.
Denis F. Sheils
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
dsheils@kohnswift.com

RYAN & MANISKAS, LLP
Katharine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
kryan@rmclasslaw.com
rmaniskas@rmclasslaw.com

***Counsel for Brigham Exploration Company and Individual Appellants***

THOMPSON & KNIGHT LLP
Timothy R. McCormick
Michael W. Stockham
Mackenzie Wallace
1722 Routh Street, Suite 1500
Dallas, Texas 75201
timothy.mccormick@tklaw.com
michael.stockham@tklaw.com
mackenzie.wallace@tklaw.com

THOMPSON & KNIGHT LLP
Debora B. Alsup
Thompson & Knight LLP
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701
debora.alsup@tklaw.com

/s/ *Russell S. Post*
Russell S. Post

28

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 6,093 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: September 28, 2015.


*/s/ Russell S. Post*
Russell S. Post

***Counsel for Appellants,***
***Statoil ASA and Fargo Acquisition, Inc.***

29

# No. 03-15-00248-CV

## IN THE COURT OF APPEALS
### FOR THE THIRD DISTRICT OF TEXAS
### AT AUSTIN

BRIGHAM EXPLORATION COMPANY, BEN M. BRIGHAM,
DAVID T. BRIGHAM, HAROLD D. CARTER, STEPHEN P. REYNOLDS,
STEPHEN C. HURLEY, HOBART A. SMITH, SCOTT W. TINKER,
STATOIL ASA AND FARGO ACQUISITION, INC.,
*Appellants*,

v.

RAYMOND BOYTIM, ET AL., INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED,
*Appellees*.

On Appeal from the 201st Judicial District Court of Travis County, Texas,
Trial Court Cause No. D-1-GN-11-003205

## APPENDIX TO BRIEF OF APPELLANTS
## STATOIL ASA AND
## FARGO ACQUISITION, INC.

**TAB**

1    Trial Court's Order (CR3163-3167)

2    Court of Appeals' memorandum opinion in previous appeal of class certification

3    "Exhibit 1" filed with the Court by the district clerk on June 5, 2015, which includes "Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims"

4     "Exhibit 1" filed with the Court on August 14, 2015, which includes "Plaintiffs' Response to Defendants' Joint Opposition to Class Certification and Plaintiffs' Proposed Amended Plan for Trial of the Class Claims"

5     Judge Dietz's order denying the request for a temporary injunction (CR305-307)

# Tab 1
**Trial Court's Order (CR3163-3167)**

Filed in The District Court
of Travis County, Texas

APR · 9 2015

At_____4:00____P__M.
Velva L. Price, District Clerk

Cause No. D-1-GN-11-003205
(Consolidated)

| | |
|---|---|
| RAYMOND BOYTIM, et al., Individually and § <br> on Behalf of All Others Similarly Situated, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> BRIGHAM EXPLORATION COMPANY, § <br> et al., § <br> § <br> Defendants. § <br> § | IN THE DISTRICT COURT OF <br><br> TRAVIS COUNTY, TEXAS <br><br> 201st JUDICIAL DISTRICT |

## ORDER GRANTING CLASS CERTIFICATION

Case # D-1-GN-11-003205

003974777

3163

The Court, having considered the papers filed in support of, and in opposition to, plaintiffs' Motion for Class Certification, as well as oral argument thereon, finds as follows, pursuant to Rule 42 of the Texas Rules of Civil Procedure:

1. The members of the Class, as defined below, are so numerous that joinder of all members is impracticable. Plaintiffs have demonstrated that Brigham had more than 117,318,932 shares of stock outstanding prior to the acquisition of Brigham Exploration Company ("Brigham" or the "Company") by Statoil ASA ("Statoil") (the "Acquisition").

2. Plaintiffs bring claims against the former members of Brigham's Board of Directors for breach of their fiduciary duties, and a claim against the Company and Statoil for aiding and abetting the Board's breach of fiduciary duties. These claims raise questions of law and fact common to the Class including, *inter alia*, the following:

(a) whether the former members of the Brigham's Board breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiffs and the other members of the Class in connection with the Acquisition;

(b) whether the former members of Brigham's Board engaged in a plan and scheme to benefit themselves and/or Statoil at the expense of the members of the Class;

(c) whether the former members of Brigham's Board breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiffs and the other members of the Class in connection with the Acquisition;

(d) whether Brigham and/or Statoil aided and abetted the breach of fiduciary duties by the Individual Defendants;

(e) whether defendants breached any of their other fiduciary duties to plaintiffs and the other members of the Class in connection with the Acquisition, including the duties of

- 1 -

3164

candor, good faith, diligence, honesty and fair dealing by failing to disclose all material information to Brigham shareholders;

(f)    whether defendants erected preclusive barriers to discourage other offers for the Company and its assets; and

(g)    whether plaintiffs and the other members of the Class were damaged as a result of defendants' misconduct.

3.    The claims of Raymond Boytim, Hugh Duncan, Robert Fioravanti, Walter Schwimmer, The Edward J. Goodman Life Income Trust and The Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen and Howard Weissberg (collectively "plaintiffs") are typical of the claims of the Class. Plaintiffs have demonstrated that their claims, as well as those possessed by the Class, arise out of the same course of conduct or events and are based on the same legal theories.

4.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs established, through deposition testimony, sworn affidavits, and/or live testimony provided at the class certification hearing, that they: (i) have taken an active role in the prosecution of the action, including communicating regularly with their attorneys, reviewing the documents and deposition testimony of defendants, responding to discovery requested by defendants, independently investigating Brigham and Statoil and the acquisition; (ii) are knowledgeable about the factual and legal issues involved in the case; (iii) understand the procedural history of the case; (iv) have no interests antagonistic to the class; (v) understand their duties to the class and seek to maximize any recovery for the class; (vi) strongly believe in the legitimacy of their grievance; and (vii) are prepared to appear at trial.

5.    Plaintiffs' selected class counsel will adequately represent plaintiffs and the Class and prosecute their claims. Robbins Geller Rudman & Dowd LLP is experienced in the area of securities

- 2 -

3165

litigation and has vigorously prosecuted this case to date. Boulette Golden & Marin L.L.P. is likewise experienced in complex commercial litigation.

6.      The questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiffs have demonstrated that each member of the Class is the victim of a common course of conduct engaged in by defendants.

7.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy in this action.

(a)      Plaintiffs have established that, given the relatively small amount of dollars which may be at issue for many class members, the class action mechanism is the only means by which a claim challenging defendants' actions will ever be adjudicated, that pursuing individual actions would be prohibitively expensive for the vast majority of the Class, especially in light of the potentially small dollar amount of their individual claims, and that Class members' interests are far better served by the class action device than pursuing individual actions; and

(b)      Plaintiffs have submitted trial plan which offers a rigorous analysis and a specific explanation of how the class claims are to proceed to trial. After evaluating the plan, the Court finds that a trial in this action will be manageable in that it involves the application of the laws of a single state (Delaware), there are no individual issues to be resolved by the fact-finder, and that the sole individual issue (the amount of shares held by each class member on October 17, 2011) can be resolved through a post-judgment proceeding. The Court hereby adopts and incorporates Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims, filed March 19, 2015.

8.      Plaintiffs' Amended Notice of Pendency of Class Action, attached as Exhibit 10 to Plaintiffs' Amended Motion for Class Certification, satisfies Rule 42(c)(2)(B) of the Texas Rules of Civil Procedure. It concisely and clearly states in plain, easily understood language: (i) the nature of

the action; (ii) the definition of the Class certified; (iii) the Class claims, issues and defenses; (iv) that a member of the Class may enter an appearance through counsel if the member so desires; (v) that the judgment, whether favorable or not, will include and bind all members who do not request exclusion by the specified date; (vi) that the court will exclude any members of the Class if they request exclusion; and (vii) when and how a member may be exclude themselves from the Class.

Good cause appearing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' Motion for Class Certification is GRANTED.

2.      The Class is defined as all holders of common stock of Brigham Exploration Company as of October 17, 2011. Excluded from the Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

3.      Plaintiffs are appointed as representatives of the Class.

4.      Robbins Geller Rudman & Dowd LLP is appointed as Class Counsel, and Boulette Golden & Marin L.L.P. is appointed as Liaison Counsel.

5.      The Court approves Plaintiffs' Amended Notice of Pendency of Class Action. Within 30 days, the parties shall meet and confer regarding a proposed plan for dissemination of the notice.

**ORDER**

IT IS SO ORDERED.

DATED: _April 9, 2015_                     _____

                                 THE HONORABLE LORA LIVINGSTON

- 4 -

# Tab 2

**Court of Appeals' memorandum opinion in previous appeal of class certification**

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00191-CV

Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen P. Reynolds, Stephen C. Hurley, Hobart A. Smith, Scott W. Tinker, Statoil ASA and Fargo Acquisition, Inc., Appellants

v.

Raymond Boytim, Hugh Duncan, Robert Fioravanta, Walter Schwimmer, Michael Ohler, Ryan Ohler, Walter Ohler, Jr., The Edward J. Goodman Life Income Trust and The Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen, and Howard Weissberg, Individually and on Behalf of Others Similarly Situated, Appellees

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-11-003205, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellants Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen P. Reynolds, Stephen C. Hurley, Hobart A. Smith, Scott W. Tinker, Statoil ASA and Fargo Acquisition, Inc., bring this interlocutory appeal challenging the trial court's order granting class certification. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3). For the reasons that follow, we decertify the class, reverse, and remand this cause for further proceedings consistent with this opinion.

## BACKGROUND

Appellant Brigham Exploration Company (Brigham) was a publically traded company. Appellant Statoil ASA (Statoil) made a tender offer for all shares of stock in Brigham at $36.50 per share, and Brigham's Board of Directors approved the transaction on October 16, 2011. Brigham announced the transaction the following day, and Statoil commenced the tender offer on October 28, 2011. After shareholders had voluntarily tendered over 92 % of the outstanding shares in December 2011, Statoil effected a short-form merger, converting each remaining share of stock into a right to receive $36.50.

Appellees brought suit shortly after Brigham's announcement of the transaction, seeking to enjoin the transaction based on the Brigham Board's alleged failure to disclose material information to the shareholders. After a hearing on November 22, 2011, the trial court denied appellees' request for an injunction. Appellees proceeded with their suit, seeking class certification and damages based on their claims that individual Board members breached their fiduciary duties and that Brigham and Statoil aided and abetted the Board members' breaches of their fiduciary duties. Appellants denied the allegations and asserted affirmative defenses including acquiescence and waiver.

Appellees filed a proposed order granting class certification and a proposed amended preliminary plan for the trial of the class claims. In their proposed amended plan, appellees set out Delaware substantive law that they contend applies to their claims and describe how they plan to prove their claims and damages at trial with common evidence. Appellees describe their plan for the trial as follows:

2

At this time, plaintiffs envision a single trial with the following procedural steps:

1.   Plaintiffs will present their case-in-chief, submitting common evidence of defendants' wrongdoing, class-wide injury, and total damages;

2.   The Individual Defendants will present the defenses they wish to advance;

3.   Brigham and Statoil will present the defenses they wish to advance;

4.   Plaintiffs will present their rebuttal case; and

5.   The case will be submitted to the jury, which will enter a verdict based on a proposed jury charge.

Appellees' proposed order granting class certification and their amended preliminary plan did not otherwise address appellants' pleaded defenses.

Appellants objected to appellees' proposed order and trial plan. Their objections included that "the proposed trial plan is insufficient because it does not correctly identify the elements for each claim or defense asserted in the pleadings" and that it "contains only Plaintiffs' allegations and theory of the law without incorporating any of the Defendants' theories or defenses." The trial court held an evidentiary hearing on appellees' motion for class certification in October 2012 and a subsequent hearing in February 2013. After the hearing in February, appellants filed a document titled "Attachment to Plaintiffs' Proposed Amended Preliminary Plan for Trial of Class Claims." In the document, appellants describe their defensive theories and cite Delaware substantive law that they contend applies to appellees' claims and appellants' affirmative defenses.

The trial court thereafter granted appellees' motion for class certification and certified a class "defined as all holders of common stock of Brigham Exploration Company as of

Oct. 17, 2011," the date the transaction was announced, excluding from the class defendants and other persons and entities related to or affiliated with defendants. In its order granting class certification, the trial court made findings concerning appellees' claims, including that "Plaintiffs have submitted [a] trial plan which offers a rigorous analysis and a specific explanation of how the class claims are to proceed to trial." Based on its evaluation of appellees' trial plan, the court also found that "a trial in this action will be manageable in that it involves the application of the laws of a single state (Delaware), there are no individual issues to be resolved by the fact-finder, and that the sole individual issue (the amount of shares held by each class member on October 17, 2011) can be resolved through a post-judgment proceeding."

In the order granting class certification, the trial court expressly adopted and incorporated appellees' proposed amended preliminary plan for the trial of the class claims. Although the trial court also refers to "Defendants' position with respect to Plaintiffs' Trial Plan as set forth in its Attachment to Plaintiffs' Proposed Amended Preliminary Plan for Trial of Class Claims," it does not adopt or incorporate the attachment in its order or otherwise analyze the substance of appellants' position set forth in the attachment. This interlocutory appeal followed.

## ANALYSIS

In six issues, appellants challenge the trial court's order granting class certification. In their first four issues, they contend that the trial court abused its discretion in concluding that the named plaintiffs and their counsel are adequate, that the named plaintiffs' claims are typical, and that individualized issues do not predominate. *See* Tex. R. Civ. P. 42(a)(3), (4), (b)(3). In their fifth issue, appellants urge that the trial court abused its discretion "in failing to 'rigorously analyze' all

4

certification requirements under Rule 42, as evidenced by the legally deficient class-action 'trial plan' approved by the [trial] court." In their sixth issue, they urge that the trial court abused its discretion in certifying the class and approving the trial plan.

**Class Certification Requirements and Standard of Review**

Appellate courts review a class certification order for abuse of discretion. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). "A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles." *Bowden*, 247 S.W.3d at 696 (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)). We do not indulge every presumption in the trial court's favor, however, "as compliance with class action requirements must be demonstrated rather than presumed." *Id.* (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). "Courts must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites have been met." *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). The Texas Supreme Court has rejected a "certify now and worry later" approach. *Id.* at 435. Trial courts must determine the underlying substantive law prior to certification "as courts can hardly evaluate the claims, defenses or applicable law without knowing what the law is." *Lapray*, 135 S.W.3d at 672.

All class actions must satisfy the four threshold requirements contained within Rule 42(a) of the Texas Rules of Civil Procedure: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the

5

claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 42(a)(1)–(4); *Bernal*, 22 S.W.3d at 433. In addition to the subsection (a) prerequisites, class actions also must satisfy at least one of the subdivisions of Rule 42(b). *See* Tex. R. Civ. P. 42(b) (subsection (b) directs that only certain kinds of actions can be class actions); *Bernal*, 22 S.W.3d at 433.

Here the trial court granted class certification under Rule 42(b)(3). To certify a class under Rule 42(b)(3), in addition to the subsection (a) prerequisites, the trial court must "find that 'questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy.'" *Lapray*, 135 S.W.3d at 663 (quoting Tex. R. Civ. P. 42(b)(3)) (emphasis in original). Subsection (c)(1)(D) of Rule 42 also requires certain statements to be included in an order granting or denying certification under Rule 42(b)(3). Relevant to this appeal, the order "must state . . . the elements of each claim or defense asserted in the pleadings." Tex. R. Civ. P. 42(c)(1)(D)(i).

**The Trial Court's Trial Plan**

We begin with appellants' fifth issue because it is dispositive. Appellants urge that the trial court abused its discretion "in failing to 'rigorously analyze' all certification requirements under Rule 42, as evidenced by the legally deficient class-action 'trial plan' approved by the [trial]

6

court." Appellants focus, among other alleged deficiencies in the trial plan, on the omission of any discussion or analysis of their affirmative defenses.[1]

"[A] trial plan is required in every certification order to allow reviewing courts to assure that *all* requirements for certification under Rule 42 have been satisfied." *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004) (emphasis in original). "The formulation of a trial plan assures that a trial court has fulfilled its obligation to rigorously analyze all certification prerequisites and 'understands the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Id.* (quoting *Bernal*, 22 S.W.3d at 435 (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996))). "'Thus it is improper to certify a class without knowing how the claims can and will be tried.'" *Id.* at 555.

Here, the trial court's order and the adopted trial plan fail to meaningfully address appellants' pleaded defenses. We cannot ignore the trial court's failure to comply with the express requirement in Rule 42 to state the elements of those defenses in its order. Tex. R. Civ. P. 42(c)(1)(D)(i). Further, by failing to include analysis of the pleaded defenses, the trial court failed

---

[1] Appellants' other asserted deficiencies in the trial plan include that their affirmative defenses require individualized proof, that the plan improperly includes claims for breach of the duty of care and disclosure claims, that the plan improperly omits the element of bad faith as to the claim of breach of the duty of loyalty, that the plan fails to address the effects of the aiding and abetting claims against Statoil, and that the plan and the trial court's order make improper factual findings. They specifically challenge the following sentence in the trial court's order: "Plaintiffs have demonstrated that each member of the Class is the victim of a common course of conduct engaged in by defendants" and the following sentence in the trial plan: "The Board allowed itself to be steered into a transaction with Statoil by a management team who was intent on achieving a liquidity event for their tens of millions of dollars in otherwise illiquid holdings in the Company."

to conduct the required "rigorous analysis" before ruling on the class certification. *See Bernal*, 22 S.W.3d at 435; *see also Texas S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 247 (Tex. App.—Corpus Christi 2008, no pet.) (noting that "difficult, if not impossible, for [the appellate court] to determine if the class should have been certified" and "surmis[ing] that the trial court's failure to include any discussion of these items in the trial plan is a result of its failure to rigorously analyze [the issues] in light of the predominance requirement").

We conclude that the trial court abused its discretion by certifying a class without an order complying with the express requirements of Rule 42 and "without formulating a trial plan confirming that it has rigorously analyzed the requirements of *Rule 42*." *See State Farm*, 156 S.W.3d at 557 (emphasis in original). Thus we must decertify the class and remand the case to the trial court. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 778 (Tex. 2005) (decertifying class and remanding so that trial court "may determine effect of . . . defense on the requirements for class certification"); *National W. Life Ins. Co. v. Rowe*, 164 S.W.3d 389, 390 (Tex. 2005) (per curiam) (reversing judgment of court of appeals that affirmed class certification and remanding cause to trial court because trial court "did not conduct the rigorous analysis of the issues to be tried").

## CONCLUSION

For these reasons, we decertify the class that the trial court certified, reverse, and remand the cause for further proceedings consistent with this opinion.[2]

---

[2] Having concluded that certification was improper because the trial court's order and its trial plan fail to meaningfully address pleaded defenses, we do not consider appellants' additional challenges to the other certification prerequisites. *See Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 75 (Tex. 2003) (reversing certification because none of the issues identified in trial

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed:   August 15, 2014

---

plan satisfied commonality requirement and noting that the court "need not consider [appellant]'s additional challenges to the other certification prerequisites"); _Texas Parks & Wildlife Dep't v. Dearing_, 240 S.W.3d 330, 361 (Tex. App.—Austin 2007, pet. denied) (deferring further analysis of propriety of class certification because impact of case on claims and defenses "will be integral to the district court's consideration of class certification on remand"). Further, we express no opinion on the proper outcome of a rigorous analysis under Rule 42. _See North Am. Mortg. Co. v. O'Hara_, 153 S.W.3d 43, 44–45 (Tex. 2004) (per curiam) (declining to examine whether certification proper in absence of trial plan and noting that court of appeals should have remanded case for further certification proceedings "without dictating the result").

# Tab 3

**"Exhibit 1" filed with the Court by the district clerk on June 5, 2015, which includes "Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims"**

FILED
June 5, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

03-15-00248-CV

Filed in The District Court
of Travis County, Texas

MAR 19 2015

At_____3:10_____P.M.
Velva L. Price, District Clerk

Cause No. D-1-GN-11-003205
(Consolidated)

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | TRAVIS COUNTY, TEXAS |
| BRIGHAM EXPLORATION COMPANY, et al., | § § § | 261st JUDICIAL DISTRICT |
| Defendants. | § § § § § | |

---

**AFFIDAVIT OF STEVEN M. JODLOWSKI IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS STATOIL ASA AND FARGO ACQUISITION, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION AND OBJECTION TO PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS**

---

1014504_1

I, STEVEN M. JODLOWSKI, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California and am admitted *pro hac vice* in this action. I am associated with the law firm of Robbins Geller Rudman & Dowd LLP, one of counsel of record for plaintiffs. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this affidavit in support of Plaintiffs' Response to Defendants Statoil ASA and Fargo Acquisition, Inc.'s Supplemental Brief in Support of Opposition to Class Certification and Objection to Plaintiffs' Proposed Amended Plan for Trial of Class Claims.

3. Attached are true and correct copies of the following exhibits:

Exhibit 1: Plaintiffs' Proposed Second Amended Plan for Trial of Class Claims; and

Exhibit 2: *Havens, et al. v. Pate*, No. 2002-16085, Defendants' Fourth Amended Original Answer (Harris Cnty. Dist. Ct. Aug. 19, 2005).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of March, 2015, at San Diego, California.

_____
STEVEN M. JODLOWSKI

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
                       ) ss:
County of San Diego )

Subscribed and sworn to (or affirmed) before me on this 19 day of March, 2015, by Steven M. Jodlowski, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

DEBORAH D. HAYES
Commission # 1951936
Notary Public - California
San Diego County
My Comm. Expires Oct 9, 2015

_____
Notary Public, State of California

1014504_1

## CERTIFICATE OF SERVICE

Pursuant to the attached Declaration of Service by E-Mail, I hereby certify that a true and correct copy of the foregoing instrument has been served in accordance to the Texas Rules of Civil Procedure, to those listed on the attached service list, on this 19th day of March 2015.

/s/ Michael D. Marin
MICHAEL D. MARIN

- 2 -

1014504_1

## DECLARATION OF SERVICE BY E-MAIL

I, June P. Ito, not a party to the within action, hereby declare that on March 19, 2015, I served the attached AFFIDAVIT OF STEVEN M. JODLOWSKI IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS STATOIL ASA AND FARGO ACQUISITION, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION AND OBJECTION TO PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS on the parties in the within action by e-mail addressed as follows:

| Counsel for Defendant(s) | | |
|---|---|---|
| Timothy R. McCormick<br>Michael W. Stockham<br>Timothy E. Hudson<br>Debora B. Alsup<br>Danley Cornyn | Thompson & Knight LLP | timothy.mccormick@tklaw.com<br>michael.stockham@tklaw.com<br>tim.hudson@tklaw.com<br>debora.alsup@tklaw.com<br>danley.cornyn@tklaw.com |
| Michael C. Holmes<br>Jennifer B. Poppe<br>Thomas S. Leatherbury | Vinson & Elkins L.L.P. | mholmes@velaw.com<br>jpoppe@velaw.com<br>tleatherbury@velaw.com |
| Fields Alexander<br>Parth S. Gejji<br>Christopher R. Cowan | Beck Redden LLP | falexander@beckredden.com<br>pgejji@beckredden.com<br>ccowan@beckredden.com |
| Counsel for Plaintiff(s) | | |
| Michael Burnett | Armburst & Brown, PLLC | mburnett@abaustin.com |
| Kelly N. Reddell | Baron & Budd, P.C. | kreddell@baronbudd.com |
| Michael D. Marin | Boulette & Golden LLP | mmarin@boulettegolden.com |
| Evan J. Smith<br>Marc L. Ackerman | Brodsky & Smith, LLC | esmith@brodsky-smith.com<br>mackerman@brodsky-smith.com |
| Hamilton Lindley | Dunnam & Dunnam | hlindley@dunnamlaw.com |
| Shane T. Rowley | Levi & Korsinsky LLP | srowley@zlk.com |
| Joe Kendall<br>Daniel Hill<br>Jamie J. McKey | Kendall Law Group, LLP | jkendall@kendalllawgroup.com<br>dhill@kendalllawgroup.com<br>jmckey@kendalllawgroup.com |
| Denis F. Sheils | Kohn, Swift & Graf, P.C. | dsheils@kohnswift.com |
| Brian J. Robbins<br>Stephen J. Oddo<br>Edward B. Gerard | Robbins Arroyo LLP | brobbins@robbinsarroyo.com<br>soddo@robbinsarroyo.com<br>egerard@robbinsarroyo.com |
| Katharine M. Ryan<br>Richard A. Maniskas | Ryan & Maniskas, LLP | kryan@rmclasslaw.com<br>rmaniskas@rmclasslaw.com |
| Jonathan M. Stein | Saxena White P.A. | jstein@saxenawhite.com |
| Willie C. Briscoe | The Briscoe Law Firm | wbriscoe@thebriscoelawfirm.com |
| Patricia C. Weiser<br>James M. Ficaro | The Weiser Law Firm, P.C. | pw@weiserlawfirm.com<br>jmf@weiserlawfirm.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 19, 2015, at San Diego, California.

_____
JUNE P. ITO

1014504_1

# EXHIBIT 1

Cause No. D-1-GN-11-003205
(Consolidated)

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, § § § | IN THE DISTRICT COURT OF | |
| Plaintiffs, § § | TRAVIS COUNTY, TEXAS | |
| vs. § § | 261st JUDICIAL DISTRICT | |
| BRIGHAM EXPLORATION COMPANY, et al., § § § | | |
| Defendants. § § § | | |

## PLAINTIFFS' PROPOSED SECOND AMENDED PLAN
## FOR TRIAL OF CLASS CLAIMS

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS' CLAIMS ................................................................................................2

    A.    Plaintiffs' Claim for Breach of Fiduciary Duty Against the Individual Defendants ........................................................................................................3

    B.    Aiding and Abetting Breach of Fiduciary Duty Against Brigham and Statoil ................................................................................................................4

II. DEFENDANTS' PLEADED DEFENSES .....................................................................5

    A.    Defense Nos. 1 and 9 ........................................................................................6

    B.    Defense No. 2......................................................................................................6

    C.    Defense Nos. 3, 5-6............................................................................................7

    D.    Defense No. 4......................................................................................................8

    E.    Defense No. 7......................................................................................................9

    F.    Defense No. 8......................................................................................................9

    G.    Defense Nos. 10 and 11 ..................................................................................10

    H.    Defense No. 12..................................................................................................11

    I.    Defense No. 13..................................................................................................12

III. CLASS ISSUES..........................................................................................................12

    A.    Procedural History ..........................................................................................12

    B.    Common Questions of Law and Fact Predominate .....................................13

        1.    Plaintiffs Will Prove Breach of Fiduciary Duty Through Common Evidence..............................................................................................14

        2.    Plaintiffs Will Prove with Common Evidence Causation and Amount of Damages .......................................................................16

        3.    Defendants' Defenses Are Susceptible to Common Proof.......................17

1014363_1

Pursuant to Tex. R. Civ. P. 42(d), this Court hereby adopts the following trial plan in connection with its order granting certification of plaintiffs' claims against defendants. This plan provides a detailed assessment of how a single trial can be conducted against Brigham Exploration Company ("Brigham" or the "Company"), the members of its Board of Directors (the "Individual Defendants" or the "Board"), and Statoil ASA ("Statoil") on behalf of a proposed class of all holders of Brigham common stock as of October 17, 2011. Based upon the voluminous written submissions of the parties in connection with plaintiffs' motion for class certification, as well as hearings held on October 22, 2012, February 22, 2013, December 17, 2014, and March 31, 2015, it is evident to the Court that trial of this action on a class-wide basis will present no unduly challenging manageability issues.

This plan addresses the class certification issues, the claims arising from defendants' actions, the manner in which defendants' common course of conduct will be proven at trial, and other issues relating to the management and superiority of a class-wide trial. As discussed below, this action stems from the sale of Brigham to Statoil for $36.50 per share of Brigham stock. That sale was completed on December 8, 2011, one-and-a-half months after Brigham and Statoil announced to shareholders that the companies had entered into a definitive merger agreement. Plaintiffs allege that Brigham's directors breached their fiduciary duties to shareholders in agreeing to and facilitating the sale. Plaintiffs also bring a claim against Brigham and Statoil for aiding and abetting the breach of fiduciary duty. In response to plaintiffs' claims, defendants have pleaded several defenses, which are addressed below.

The Court envisions a single trial with the following procedural steps:

1.      Plaintiffs will present their case-in-chief, submitting common evidence of defendants' wrongdoing, class-wide injury, and total damages;

2.      The Individual Defendants will present the defenses they wish to advance;

- 1 -

3.    Brigham and Statoil will present the defenses they wish to advance;

4.    Plaintiffs will present their rebuttal case; and

5.    The case will be submitted to the jury, which will enter a verdict based on a proposed jury charge.

Counsel for plaintiffs are deeply experienced in takeover litigation, especially in takeover cases after the acquisition closes, and have prepared similar cases for trial. Counsel for plaintiffs have also tried numerous takeover cases on a class-wide basis, including at least one action in Texas. *See Elloway v. Pate*, 238 S.W.3d 882 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Plaintiffs will present their case through the testimony of their experts; the testimony and documents of the Individual Defendants, Brigham and Statoil; the testimony and documents of defendants' financial advisors; and, potentially, the documents and testimony of Shell, ENI, Chevron and Total, four potential buyers.

If a verdict for the plaintiffs results, judgment in a total, single monetary sum will be entered in favor of the Class. A post-judgment proceeding will follow, in which the Court will approve the procedure for distributing checks (or direct deposits) to each individual Class member based on plaintiffs' expert's damage calculations. Plaintiffs will ask the Court to approve the final allocation of damages. If a verdict is returned in favor of defendants, judgment dismissing the action with prejudice would be entered.

## I.    PLAINTIFFS' CLAIMS

This action involves claims against Brigham's Board for breach of its fiduciary duties, and a claim against the Company and Statoil for aiding and abetting the Board's breach of fiduciary duties.

- 2 -

## A.  Plaintiffs' Claim for Breach of Fiduciary Duty Against the Individual Defendants

The primary claim in this case is a claim for breach of fiduciary duty against the members of Brigham's Board at the time of the acquisition.  That claim is governed by Delaware law because Brigham was a Delaware corporation.  Article 8.02 of the Texas Business Corporation Act provides that the internal affairs (including the actions of its Board Members) of a foreign corporation doing business in Texas are controlled by the substantive law of the state of incorporation.

Directors owe fiduciary duties of care and loyalty to the corporation and its shareholders. *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989); *accord Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986).  In the context of a change of control, such as this, courts review directors' conduct under the enhanced scrutiny standard and must employ "less tolerance for slack by the directors" and be cognizant of the fact that "[a]lthough the directors have a choice of means, they do not comply with their [fiduciary] duties unless they undertake reasonable steps to get the best deal." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 192 (Del. Ch. 2007); *see also Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003); *Revlon*, 506 A.2d 173.  The enhanced scrutiny test requires:

> (a) a judicial determination regarding the adequacy of the decisionmaking process employed by the directors, including the information on which the directors based their decision; and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing.

*Paramount Commc'ns v. QVC Network*, 637 A.2d 34, 45 (Del. 1994); *Omnicare*, 818 A.2d at 931.  Under the enhanced scrutiny test, "[t]he directors have the burden of proving that they were adequately informed and acted reasonably." *Paramount*, 637 A.2d at 45.

In addition, as part of their fiduciary duties to Brigham's shareholders, the Board must fully and fairly disclose all material information within the Board's control. *See Netsmart*, 924 A.2d at 202; *In re Pure Resources, Inc., S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) ("When a document ventures

- 3 -

1014363_1

into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts."). Here, plaintiffs contend that the Individual Defendants disseminated a Schedule 14D-9 ("Schedule 14D-9") and a tender offer statement on Schedule TO ("Schedule TO"), filed with the Securities and Exchange Commission on October 28, 2011, which was false and misleading and failed to disclose all material information to Brigham shareholders in connection with the tender offer from Statoil. The determination of whether the Board breached that duty in this instance turns on the materiality of the alleged non-disclosures and omissions. Under relevant case law, courts determine materiality by assessing whether there is a substantial likelihood that a reasonable shareholder would consider the fact important in deciding how to vote. *See Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1277 (Del. 1994); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

## B. Aiding and Abetting Breach of Fiduciary Duty Against Brigham and Statoil

Plaintiffs also have a claim against Brigham and Statoil, for aiding and abetting of the breaches of fiduciary duties by the Individual Defendants, as members of the Board of Brigham. *Rand v. Western Airlines*, No. 8632, 1989 Del. Ch. LEXIS 118, at *14 (Del. Ch. Sept. 11, 1989) ("[I]f there were objective evidence that the transaction benefits the fiduciaries at the stockholders' expense, knowing participation by a third party might be inferable."). To prevail on their claim for aiding and abetting a breach of fiduciary duty, plaintiffs must prove: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by Statoil; and (4) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001); *In re Rural Metro Corp. S'holders Litig.*, 88 A.3d 54, 80 (Del. 2014). As to the third element – knowing participation, plaintiffs must show that the buyout group "'sought to induce the breach of a fiduciary duty'" or "'make factual allegations from which knowing participation may be inferred.'" *In re Bj's Wholesale Club, Inc.*, C.A. No. 6623-VCN, 2013 Del. Ch. LEXIS 28, at *54-

- 4 -

*55 (Del. Ch. Jan. 31, 2013). Knowing participation may be inferred where a buyout group: (1) "directly 'sought to induce [a] breach of fiduciary duty'" by the board; (2) attempted to "'create or exploit conflicts of interest in the board'"; (3) "'used knowledge of the breach to gain a bargaining advantage in negotiations'" with the board; or (4) knew the "'terms of the transaction [were] so egregious or the magnitude of the side deals . . . so excessive as to be inherently wrongful.'" *Id.*

## II.   DEFENDANTS' PLEADED DEFENSES

On January 13, 2015, defendants filed a Third Amended Answer to plaintiffs' petition. In it, defendants plead the following defenses:

1.   Plaintiffs' petition fails to state a claim for which relief can be granted;

2.   The negotiation and process leading up to the signing of the merger agreement and tender offer, as well as the decision to recommend the tender offer by the Individual Defendants, are protected by the business judgment rule;

3.   Defendants did not know, and in the exercise of reasonable care could not have known, of any untruths or omissions in the Schedule 14D-9 or the Schedule TO;

4.   The alleged misrepresentations and omissions were not material and did not proximately cause any damages to plaintiffs;

5.   Defendants acted in good faith and without any intent to deceive;

6.   Defendants' alleged misstatements or omissions were made in good faith, with genuine belief;

7.   Pursuant to 8 Del C. §141(e), defendants are not liable because they relied in good faith upon the records of the corporation;

8.   Plaintiffs' claims are barred because of payment or accord and satisfaction;

- 5 -

9. Plaintiffs' generalized allegations of purported misrepresentations, deceit, or failure to disclose are barred because of a failure to plead those claims with requisite specificity;

10. Plaintiffs' claims for damages are barred as a matter of law;

11. Plaintiffs' claims are barred under the 8 Del. C. §102(b)(7) exculpation clause in Brigham's Certificate of Incorporation;

12. Plaintiffs' claims are barred by the doctrines of waiver, acquiescence, acquiescence in price, ratification, and estoppel; and

13. The recovery by plaintiffs, if any, should be precluded or reduced by virtue of the doctrine of proportionate responsibility.

### A.  Defense Nos. 1 and 9

Defendants' first and ninth defenses are directed at the sufficiency of plaintiffs' pleadings, which is a legal matter for the Court. Texas follows a "fair notice" standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see also* Tex. R. Civ. P. 47(a). The test of fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him or her, could ascertain the nature and basic issues of the controversy and the testimony that is probably relevant. *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 489 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

### B.  Defense No. 2

In their second defense, defendants contend that the business judgment rule bars plaintiffs' claims.

- 6 -

1014363_1

The business judgment rule is an evidentiary presumption. *Cede & Co. v. Technicolor*, 634 A.2d 345, 360 (Del. 1993). Where shareholders challenge transactions approved by the board of a corporation, the business judgment rule operates as "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). A shareholder plaintiff may rebut the presumption by showing that a defendant breached any one of the triads of their fiduciary duty - good faith, loyalty or due care. *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989). If the plaintiff makes this evidentiary showing, the presumption is rebutted and the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the "entire fairness" of the transaction to the shareholder plaintiff. *Nixon v. Blackwell*, 626 A.2d 1366, 1376 (Del. 1993).

## C.     Defense Nos. 3, 5-6

Defendants have raised three defenses alleging that they acted in good faith and without any intent to deceive Brigham's shareholders.

The duty to act in good faith is technically a subset of the duty of loyalty. "Encompassed within the duty of loyalty is a good faith aspect as well. 'To act in good faith, a director must act at all times with an honesty of purpose and in the best interest and welfare of the corporation.'" *Shocking Techs., Inc. v. Kosowsky*, No. 7164-VCN, 2012 Del. Ch. LEXIS 224, at *29 (Del. Ch. Sept. 28, 2012) (citation omitted). Stated alternatively, a director who acts "reckless and indifferent as to the rights of the stockholders" may breach the duty of good faith. *Perrine v. Pennroad Corp.*, 47 A.2d 479, 489 (Del. Ch. 1946) (citing *Karasik v. Pacific Eastern Corp.*, 180 A. 604 (Del. Ch. 1935)).

With respect to the defense that defendants did not know, or could not have known, of any untruths or omissions in the Schedule 14D-9 or Schedule TO, directors of a Delaware corporation

- 7 -

are under a fiduciary duty to disclose all material information within the Board's control when they seek shareholder action. *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992); *Arnold*, 650 A.2d at 1277. "The disclosure obligation . . . is said to be one that requires the disclosure of all material information within the knowledge of the corporation (and thus available to the directors)." *Behrens v. United Investors Mgmt. Co.*, No. 12876, 1993 Del. Ch. LEXIS 217, at *42 (Del. Ch. Oct. 1, 1993).

## D.     Defense No. 4

In their fourth defense, defendants assert that the alleged misrepresentations and omissions are not material and did not proximately cause damages or injuries to plaintiffs.

The Delaware Supreme Court has stated that the essential inquiry in analyzing a disclosure claim is whether the alleged omission or misrepresentation is material. *Arnold*, 650 A.2d at 1277. The objective definition of materiality employed by Delaware courts is adopted from the United States Supreme Court's decision in *TSC*, 426 U.S. 438, which states, in pertinent part:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Id.* at 449.

Under Delaware law, once materiality has been shown, causation is satisfied. In *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54 (Del. Ch. 2014), the Court of Chancery held that, "[w]hen seeking post-closing damages for breach of the duty of disclosure, however, the plaintiff must prove quantifiable damages that are 'logically and reasonably related to the harm or injury for which compensation is being awarded.'" *Id.* at 104 (citing *In re J.P. Morgan Chase & Co. S'holder*

- 8 -

1014363_1

*Litig.*, 906 A.2d 766, 773 (Del. 2006)). There, the court explained, "a [financial advisor's] actions resulted in stockholders voting on the merger based on a proxy statement that contained materially false disclosures and omissions about [financial advisor's] valuation analyses and conflicts. Stockholders were denied the information necessary to make an informed decision whether to seek appraisal. Causation is satisfied." *Rural Metro*, 88 A.3d at 107. In a later opinion, the court entered judgment and awarded damages to the stockholder class at an identical $4.17 per share for the plaintiff and each eligible class member. *In re Rural/Metro Corp. Stockholders Litig.*, 102 A.3d 205 (Del. Ch. 2014). The showing of causation involved no individual issues of proof.

### E.    Defense No. 7

Defendants also invoke §141(e) of Delaware's corporation law, 8 Del. C. §141(e), as a defense. Section 141(e) provides that directors are protected from a breach of the duty of care when the directors reasonably believe the information upon which they rely has been presented by an expert selected with reasonable care and is within that person's professional or expert competence. 8 Del. C. §141(e); *see also Brehm v. Eisner*, 746 A.2d 244, 262 (Del. 2000).

Section 141(e) does not reach claims for breaches of loyalty and good faith. *See, e.g., Selectica, Inc. v. Versata Enters.*, No. 4241-VCN, 2010 Del. Ch. LEXIS 39, at *62 (Del. Ch. Feb. 26, 2010) (recognizing that board's reliance on expert's advice may, in certain circumstances, defeat a "due care claim"), *aff'd*, 5 A.3d 586 (Del. 2010).

### F.    Defense No. 8

In their eighth defense, defendants contend that plaintiffs' claims are barred because of payment or accord and satisfaction. Three elements are necessary to prove an accord and satisfaction: (1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full

- 9 -

satisfaction of the debt. *CitiSteel USA, Inc. v. Connell Ltd. P'shp, Luria Bros. Div.*, 758 A.2d 928, 931 (Del. 2000) (citing *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997)). The burden to prove these elements is on the party alleging that the accord and satisfaction took place. *Id.* at 1068-69.

## G.  Defense Nos. 10 and 11

Defendants also contend that plaintiffs' claims for monetary damages are barred as a matter of law and under the 8 Del. C. §102(b)(7) exculpation clause in Brigham's Certificate of Incorporation. Although §102(b)(7) provision does not operate to defeat the validity of a plaintiff's claim on the merits, it permits a corporation to adopt a clause eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except in certain circumstances. *Emerald Partners v. Berlin*, 787 A.2d 85, 92 (Del. 2001).

Section 102(b)(7) applies only to directors; it does not authorize exculpation of officers. *Chen v. Howard-Anderson*, 87 A.3d 648, 686 (Del. Ch. 2014); *McPadden v. Sidhu*, 964 A.2d 1262, 1275-76 (Del. Ch. 2008). Nor does §102(b)(7) shield a corporation from monetary damages stemming from the actions of its directors or officers. 8 Del. C. §102(b)(7).

A §102(b)(7) exculpation clause also cannot eliminate or limit the liability of a director for any breach of the duty of loyalty or good faith, including a claim for non-disclosure. 8 Del. C. §102(b)(7); *accord Levy v. Stern*, No. 211, 1996 Del. LEXIS 468, at *6 n.4 (Del. Dec. 20, 1996) (§102(b)(7) "is inapplicable . . . where the alleged breach entails bad faith, intentional misconduct, or a breach of the duty of loyalty"); *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, No. 3534-CC, 2009 Del. Ch. LEXIS 126, at *25-*28 (Del. Ch. July 24, 2009), *aff'd*, 996 A.2d 795 (Del. 2010).

- 10 -

1014363_1

"Because [§102(b)(7)] is an affirmative defense, the defendants would normally shoulder the burden of establishing each of its elements, and the inapplicability of each of its four exceptions." *Rothenberg v. Santa Fe Pacific Corp.*, No. 11749, 1992 Del. Ch. LEXIS 106, at \*12-\*13 (Del. Ch. May 18, 1992); *In re Orchard Enters., Inc.*, 88 A.3d 1, 48 (Del. Ch. 2014).

## H. Defense No. 12

Defendants' twelfth defense raises four related doctrines of equity – waiver, acquiescence, ratification and estoppel – all of which defendants bear the burden of proving under Delaware law.

"'Waiver is the voluntary and intentional relinquishment of a known right. . . . It implies knowledge of all material facts and intent to waive.' Moreover, 'the facts relied upon must be unequivocal in nature.'" *Am. Family Mortg. Corp. v. Acierno*, No. 290, 1994 Del. LEXIS 105, at \*13 (Del. Mar. 28, 1994) (quoting *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)) (internal citations omitted). To be subject to the defense of acquiescence, defendants must prove every plaintiff: (i) had full knowledge of their rights and all material facts; (ii) possessed a meaningful choice in determining how to act; and (iii) acted voluntarily in a manner showing unequivocal approval of the challenged conduct. *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, No. 5334-VCN, 2013 Del. Ch. LEXIS 43, at \*25 (Del. Ch. Feb. 13, 2013). To obtain the benefits of ratification, the defendants must prove, by a preponderance of the evidence, that the plaintiffs consented to the switch after all material facts were disclosed. *O'Malley v. Boris*, No. 15735-NC, 2002 Del. Ch. LEXIS 33, at \*22 n.28 (Del. Ch. Mar. 18, 2002). "[T]he ratification doctrine does not apply to transactions where shareholder approval is statutorily required." *Gantler v. Stephens*, 965 A.2d 695, 714 (Del. 2009). "'Estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and

- 11 -

has been led thereby to change his position for the worse.'" *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 176 (Del. 1991).

## I. Defense No. 13

Defendants' last defense is based on the doctrine of proportionate responsibility. Under Chapter 33 of the Texas Civil Practice and Remedies Code, if a liability finding has been made by the jury, the jury may be asked to determine if other parties contributed to the harm for which damages are sought. Tex. Civ. Prac. & Rem. Code Ann. §33.003(a) (2006). If so, the jury may determine the percentage of responsibility of each party and reduce or eliminate any damages owed to a plaintiff. *Id.*

## III. CLASS ISSUES

### A. Procedural History

This action was initiated on October 17, 2011, when Raymond Boytim filed a petition stemming from the announcement by Brigham and Statoil that the companies had entered into a merger agreement. Several additional Brigham shareholders filed similar actions. The actions were thereafter consolidated. On November 10, 2011, plaintiffs moved for an order preventing defendants from closing the tender offer and taking down any tendered shares until defendants cured the breaches of fiduciary duty set forth in plaintiffs' petition. That motion was denied, and Statoil closed the transaction on December 8, 2011.

After the sale was consummated, plaintiffs filed a second amended consolidated petition, which added a claim for damages. Plaintiffs also added factual allegations based on their review of the documents and deposition testimony provided by defendants prior to the close of the transaction. In early March 2012, plaintiffs filed a third amended class action petition for breach of fiduciary duty. The petition added several additional named plaintiffs, but was otherwise identical to the second amended petition filed in January. Discovery is ongoing.

- 12 -

On September 17, 2012, plaintiffs moved for class certification of their claim that defendants had breached their duties to Brigham's shareholders. Both parties have submitted voluminous filings, and the Court has held numerous hearings, in connection with that motion. On October 22, 2012, the trial court held a hearing during which counsel for the parties providing opening statements in support of their respective positions and four class representatives provided live testimony. The Court held a second hearing on February 22, 2013. At that hearing, the Court addressed defendants' objections to the class certification order and proposed trial plan. Five days later, the Court issued an order certifying a class of former Brigham shareholders. An interlocutory appeal followed.

On December 17, 2014, following disposition of defendants' interlocutory appeal, the Court held a hearing to address the development of a revised trial plan which complies with Tex. R. Civ. P. 42. Specifically, the Court explored the various defenses pleaded by defendants and the defenses they expected to pursue at trial, and the Court analyzed the sources of proof defendants will offer in support of these defenses. These issues were further explored through subsequent briefing by the parties and a follow-up hearing held on March 31, 2015.

## B. Common Questions of Law and Fact Predominate

Under Rule 42(b)(3) of the Texas Rules of Civil Procedure, the moving party must show that the class should be maintained because common questions of fact or law predominate over any questions affecting only individual members. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000) (if the moving party seeks to certify a predominance-of-common-questions action, the commonality determination under Rule 42(a) is subsumed under the predominance determination). The test for predominance is whether common or individual issues will be the object of most of the efforts of the litigants and the Court. *Id.* at 434; *Snyder Commc'ns, L.P. v. Magana*, 142 S.W.3d

- 13 -

295, 300 (Tex. 2004) ("In evaluating whether common issues predominate, courts must identify the controlling substantive issues of the case and assess which issues will predominate to determine whether those issues are in fact common to the class. Courts must therefore determine 'whether common or individual issues will be the object of most of the efforts of the litigants and the court.'") (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002)).

For all of their claims, plaintiffs will rely on common proof derived directly from Brigham's directors, officers and executives, and from plaintiffs' expert(s), to prove their claims. Below is an evidentiary outline demonstrating how this case will be tried as a class action without manageability problems.

### 1. Plaintiffs Will Prove Breach of Fiduciary Duty Through Common Evidence

The elements of breach of fiduciary duty are common to each member of the stockholder class. Plaintiffs intend to prove at trial that defendants breached their fiduciary duties to shareholders when they agreed to the sale of Brigham.

To prove their claims, plaintiffs will offer evidence of the defendants' activities found in the contemporaneously created internal Brigham and Statoil documents; testimony from Brigham's directors and officers, and certain of its executives; testimony from Statoil's executives; documents and testimony from Jefferies, the financial advisor retained by the Brigham Board; and documents and testimony from Shell, ENI, Chevron and Total, four other potential buyers of Brigham. Plaintiffs believe that this evidence will show that defendants were acting in their own interests, rather than in the interests of stockholders.

Plaintiffs also allege that the Board disregarded hundreds of millions of dollars in shareholder value represented in the stand-alone plan of the Company, when it agreed to and recommended the tender offer and approved the acquisition. Common evidence of this breach will include various

- 14 -

minutes from the Board meetings, internal analyses conducted by Company management and presented to the Board, as well as presentations provided by Jefferies to the Board. It will also include expert testimony concerning the intrinsic value of the Company at the time it was sold.

Because a breach of fiduciary duty claim and an aiding and abetting claim share many of the same elements, much of the evidence supporting plaintiffs' breach of fiduciary duty claim will also be used to support the aiding and abetting claim. In addition to the evidence outlined above, the Court understands that plaintiffs intend to introduce at trial evidence that, in the days leading up to the merger, Statoil was informed that Ben Brigham did not have Board authorization to agree to a deal at $36.50, yet Statoil nevertheless encouraged Ben Brigham to obtain full Board approval of the deal.

The Court also understands that plaintiffs will introduce evidence that Statoil negotiated extensively with the Company and enjoyed access to the Company's confidential information during the negotiation process and Statoil requested, and obtained, an exclusivity agreement from Brigham to prevent competing bidders from topping or competing with its bid. According to plaintiffs, this concession prevented Brigham from pursuing discussions with other potential bidders who were interested in making a bid for the Company during this time. Moreover, as the Court understands, plaintiffs intend to introduce evidence that Statoil sought to induce the Board's breaches of fiduciary duty by ensuring that certain Board members and company insiders received various benefits that the Company's unaffiliated public shareholders did not receive. For example, when the deal closed, company insiders received over $60 million dollars for unvested stock options. Statoil also provided golden parachutes to the rest of the management team, including post-merger employment contracts. While this evidence is only illustrative of the type of evidence plaintiffs' intend to use to support their aiding and abetting claim, it is common to the class and shows that the claim can be tried on a class-wide basis. *See In re Rural Metro Corp.*, 88 A.3d at 80.

- 15 -

With respect to plaintiffs' claim that the Board breached its duty of candor, plaintiffs intend to prove this claim through the Company's Schedule 14D-9 and Schedule TO, various internal documents and testimony from Brigham's directors, officers and executives reflecting the true facts, and the likelihood that those facts would be important to the shareholders' decision to tender their shares to Statoil. In short, the focus of plaintiffs' claims is on defendants' actions leading up to the sale.

### 2. Plaintiffs Will Prove with Common Evidence Causation and Amount of Damages

Plaintiffs intend to demonstrate causation through, *inter alia*, documents and testimony from Brigham, its Board and Statoil, showing that the injury to Class members in the form of inadequate consideration was foreseeable and an intended consequence of the actions of defendants in structuring and agreeing to a sale of the Company. *Oliver v. Boston Univ.*, No. 16570-NC, 2002 Del. Ch. LEXIS 21, at *24-*25 (Del. Ch. Feb. 28, 2002) (in merger cases, all shareholders suffer "a common harm that is related to the allegedly wrongful merger and the inadequate disclosures associated with it").

With the assistance of their expert(s), plaintiffs will use common proof to demonstrate injury to Class members and calculate total damages for the Class without the need to resort to information collected from individual Class members. That common proof will be expert testimony establishing the difference between the true value of the Company and the amount actually received by the shareholders. The amount actually received is the $36.50 that all shareholders received when they either tendered their shares to Statoil or were cashed-out. If plaintiffs establish liability and damages, class members will claim their *pro rata* portion of the judgment by submitting a claim form showing the number of shares of Brigham stock they held at the time the merger was announced. *See Joseph v. Shell Oil Co.*, No. 7450, 1985 Del. Ch. LEXIS 458, at *14 (Del. Ch. Feb. 8, 1985) ("In short, if a finding of damages occurs, the damages will be mathematically

- 16 -

allocated on a per share basis to all the stockholders in similar circumstances. There is a total absence of individual issues and therefore there would be no reason for the Court to make a separate finding of damages as to each share or each shareholder."); *Rural/Metro*, 102 A.3d at 224-25.

### 3.     Defendants' Defenses Are Susceptible to Common Proof

Once plaintiffs have concluded their case-in-chief, the burden will shift to defendants to present evidence in support of their defenses. Based upon the parties' submissions in connection with plaintiffs' motion, the Court believes that the defenses pleaded by defendants are subject to common proof and will not present manageability problems. The Court assumes for purposes of this trial plan that all of the defenses pleaded by defendants apply to plaintiffs' claims and will be presented at trial.

As an initial matter, several of defendants' pleaded defenses (Nos. 1 and 9 ) are legal matters for the Court, not factual matters for the jury, and can be resolved through pre-trial motion practice. Moreover, because these defenses will resolve the claims of the entire class, if they have merit, they do not present individualized issues which would preclude a class-wide trial on the merits of plaintiffs' claims. With respect to defense No. 2 – regarding the business judgment rule – the appropriate burden(s) shouldered by each of the parties at trial will be reflected in the jury instructions. Because the burdens will govern the claims of the entire class, they will not present individualized issues.

Defendants have raised three defenses (Nos. 3, 5 and 6) in which they assert that they acted in good faith and without intent to deceive, and that they did not know of the untruths or omissions at issue. These defenses will depend on many of the same sources of common proof used to support plaintiffs' claims, including the testimony of the Individual Defendants, the testimony of current and former executives, officers and managers at Brigham and Statoil, correspondence to and from the

- 17 -

defendants during the sales process, and the Schedule 14D-9 and Schedule TO disseminated to Brigham's shareholders. In similar vein, defendants' 8 Del C. §141(e) defense will center on the Individual Defendants' testimony and beliefs regarding the opinions of the Board's financial advisors, and internal corporate documents about the competence, selection and performance of those advisors during the sales process.

With respect to defendants' fourth pleaded defense, materiality does not present an issue that requires proof from individual Class members. As noted above, materiality is judged according to an objective standard, *Arnold*, 650 A.2d 1277, and *TSC*, 426 U.S. 438, and, as such, can be proved through evidence common to the Class. *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) (directors who fail to disclose all material information breach their duty of candor to each and every one of the Company's shareholders); *see also Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex. App.–Houston [14th Dist.] 1995, writ dism'd w.o.j.) (concluding that where shareholders' injuries arise from defendants' uniform scheme of misrepresentations, typicality is satisfied). Also, as noted above, causation and damages do not raise individual issues of proof under Delaware law for post-merger disclosure claims for damages. *See infra* §II.D (citing *Rural Metro*, 88 A.3d 54, and *Rural/Metro*, 102 A.3d 205). A failure of proof on these questions will not result in individual inquiries; instead, it will simply end plaintiffs' disclosure claims.

In support of the defenses based upon §102(b)(7) (Nos. 10 and 11), the Individual Defendants intend to offer, *inter alia*, proof of their positions on the Board and their actions leading up to the acquisition; that they retained sophisticated financial and legal advisors during the process; that they performed due diligence prior to agreeing to and recommending the tender offer and consummating the transaction, including due diligence about the value of the Company; and that they held numerous Board meetings to discuss and explore the various options available to the

- 18 -

Company going forward. This proof will come in the form of testimony from the Individual Defendants and internal corporate documents created during the process. Evaluating this evidence, the jury will decide whether the Individual Defendants' actions (a) were that of a director as opposed to an officer and (b) constituted a breach of care as opposed to breach of loyalty – thereby immunizing a particular defendant (or defendants) from monetary damages. 8 Del. C. §102(b)(7); *Emerald Partners*, 787 A.2d at 92.

Defendants also assert defenses based on the equitable doctrines of accord and satisfaction, waiver, acquiescence, ratification and estoppel. The certified Class is comprised of "[a]ll holders of Brigham common stock as of October 17, 2011." The Class includes both shareholders who tendered their Brigham shares to Statoil and shareholders who did not. Based upon defendants' submissions, the Court understands that defendants intend to attempt to prove at trial that the former group is subject to these defenses because they tendered their shares voluntarily and with full knowledge of their rights and the material facts surrounding the acquisition. Defendants intend to do so through evidence showing that Brigham entered into a merger agreement with Statoil, that Statoil commenced a tender offer pursuant to that agreement, and that a percentage of Brigham's shareholders tendered their shares to Statoil and were paid a single price – $36.50 – for each of their shares. They will also offer the Schedule 14D-9 and Schedule TO.

As a practical matter, these defenses merge with the merits of plaintiffs' non-disclosure claims. Both claims turn on whether the Schedule 14D-9 and Schedule TO disclosed all material facts to Brigham's shareholders.[1] If plaintiffs establish that defendants did not disclose all material facts, plaintiffs will prevail on their non-disclosure claims and will negate one of the elements of the

---

[1] Plaintiffs have stipulated that, if defendants can prove that all material information relating to the merger was disclosed in the Schedule 14D-9 or Schedule TO, or otherwise publicly made available, defendants need not prove that each Class member was individually aware of these facts.

- 19 -

defenses – *i.e.*, that Brigham's shareholders had full knowledge of all material facts surrounding the acquisition when they tendered their shares to Statoil. The doctrines of ratification, waiver, acquiescence and estoppel only apply if the shareholder was fully informed. *infoGROUP*, 2013 Del. Ch. LEXIS 43, at *25; *Am. Family*, 1994 Del. LEXIS 105, at *13; *O'Malley*, 2002 Del. Ch. LEXIS 33, at *22 n.28.

If plaintiffs do not establish that shareholders were misled, plaintiffs' non-disclosure claims fail and defendants are entitled to judgment on that claim, without the need for a separate finding on the defenses. Either way, these defenses will be disposed of as the parties litigate the merits of plaintiffs' claims.

Any issues concerning defendants' remaining defense – that another party may be responsible for all or a portion of any harm to the Class – can be resolved through the use of an appropriate jury form. The jury will not be required to decide the issue of proportionate responsibility unless and until, there is first an appropriate finding of liability. No issue of proportionate responsibility arises unless there is first a determination of some responsibility for damages by at least one defendant. If there is a finding of liability, the jury can be asked in a verdict form to determine how much of the responsibility for the harm, in percentage terms, to place on defendants and any culpable non-parties.

DATED: March 19, 2015

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
STEVEN M. JODLOWSKI

_____
        RANDALL J. BARON

- 20 -

1014363_1

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Class Counsel for Plaintiffs

BOULETTE & GOLDEN LLP
MICHAEL D. MARIN
Texas Bar #00791174
2801 Via Fortuna Drive, Suite 530
Austin, TX 78746
Telephone: 512/732-8900
512/732-8905 (fax)

Liaison Counsel

KENDALL LAW GROUP, LLP
JOE KENDALL
DANIEL HILL
JAMIE J. McKEY
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: 214/744-3000
214/744-3015 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8150 N. Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: 214/239-4568
281/254-7789 (fax)

ARMBURST & BROWN, PLLC
MICHAEL BURNETT
100 Congress Avenue, Suite 1300
Austin, TX 78702
Telephone: 512/435-2300
512/435-2360 (fax)

- 21 -

1014363_1

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

DUNNAM DUNNAM HARMON WEST
  LINDLEY & RYAN LLP
HAMILTON P. LINDLEY
4125 W. Waco Drive
Waco, TX 76710
Telephone: 254/753-6437
254/753-7434 (fax)

BRODSKY & SMITH, LLC
EVAN J. SMITH
MARC ACKERMAN
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Telephone: 610/667-6200
610/667-9029 (fax)

LEVI & KORSINSKY, LLP
SHANE T. ROWLEY
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
866/367-6510 (fax)

KOHN, SWIFT & GRAF, P.C.
DENIS F. SHEILS
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Telephone: 215/238-1700
215/238-1968 (fax)

THE WEISER LAW FIRM, P.C.
PATRICIA C. WEISER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/225-2678 (fax)

- 22 -

1014363_1

RYAN & MANISKAS, LLP
KATHARINE M. RYAN
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

SAXENA WHITE P.A.
JONATHAN M. STEIN
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone: 561/394-3399
561/394-3382 (fax)

Additional Counsel for Plaintiffs

1014363_1

# EXHIBIT 2

| | | |
|---|---|---|
| JOHN F. HAVENS and PETER ELLOWAY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| DONNA C. PATE in her capacity as Independent Executor of the Estate of James L. Pate, TERRY L. SAVAGE, H. JOHN GREENIAUS, BRENT SCOWCROFT, LORNE R. WAXLAX, FORREST R. HASELTON, C. BERDON LAWRENCE, JAMES J. POSTL and GERALD B. SMITH, | § § § § § § § § § | 295TH JUDICIAL DISTRICT |
| Defendants. | | |
| [consolidated with] | § § § | IN THE DISTRICT COURT OF |
| HOWARD LASKER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § § § | |
| Plaintiff, | § § § | HARRIS COUNTY, TEXAS |
| vs. | § § § | |
| DONNA C. PATE in her capacity as Independent Executor of the Estate of James L. Pate, TERRY L. SAVAGE, H. JOHN GREENIAUS, BRENT SCOWCROFT, LORNE R. WAXLAX, FORREST R. HASELTON, C. BERDON LAWRENCE, JAMES J. POSTL and GERALD B. SMITH, | § § § § § § § § § | 295TH JUDICIAL DISTRICT |
| Defendants. | | |

## DEFENDANTS' FOURTH AMENDED ORIGINAL ANSWER

Donna C. Pate in her capacity as Independent Executor of the Estate of James L. Pate, Terry L. Savage, H. John Greeniaus, Brent Scowcroft, Lorne R. Waxlax, Forrest R. Haselton, C. Berdon Lawrence, James J. Postl and Gerald B. Smith, (collectively "Defendants") answer Plaintiffs' Fourth Amended (Consolidated) Petition as follows:

## I. General Denial

Pursuant to Texas Rule of Civil Procedure 92, Defendants generally deny the material allegations, charges and claims contained in Plaintiffs' Fourth Amended (Consolidated) Petition. Plaintiffs therefore must prove these allegations to the jury by the greater weight of the believable evidence, as required by the Constitution and laws of this State.

## II. Special Exceptions

1. Defendants specially except to Plaintiffs' Fourth Amended (Consolidated) Petition in its entirety because Plaintiffs failed to make a pre-suit demand on the Pennzoil board of directors as required by Delaware law.

2. Defendants further specially except and object to Plaintiffs' Fourth Amended (Consolidated) Petition in its entirety because a party seeking to maintain a shareholder derivative action must allege with particularity either (1) that he has made a demand upon the corporation's board of directors to bring the lawsuit, or (2) that such a demand would be futile and is excused. Plaintiffs failed to make such a demand upon Pennzoil's board of directors and do not and cannot allege with any particularity that the demand would have been futile.

3. Defendants specially except to Paragraphs 74 and 75 of Plaintiffs' Fourth Amended (Consolidated) Petition, in which Plaintiffs assert a claim for aiding and abetting breach of fiduciary duty, because those paragraphs fail to give adequate notice of the Defendants against whom the aiding and abetting claim is asserted. Plaintiffs should be required to identify

which Defendants allegedly breached fiduciary duties and which Defendants did not breach fiduciary duties but rather allegedly aided and abetted other Defendants in doing so.

4.     Defendants specially except to Plaintiffs' Fourth Amended (Consolidated) Petition in its entirety because it fails to state the maximum amount of damages Plaintiffs seek.

### III.   Affirmative Defenses

5.     Plaintiffs lack standing and therefore are not entitled to recover for themselves or derivatively for Pennzoil in the capacity in which they sue.

6.     Plaintiffs failed to make demand on Pennzoil and therefore are not entitled to recover in the capacity in which they sue.

7.     Plaintiffs' claims for monetary damages for Defendants' alleged breaches of the duty of care and to disclose are barred by the Limitation of Liability provision in Article IX of Pennzoil's certificate of incorporation.

8.     Plaintiffs' claims for monetary damages for Defendants' alleged breaches of the duty of care were extinguished by the fully informed shareholder vote approving and ratifying the merger.

### IV.   Attorneys' Fees and Costs

9.     Pursuant to Article 5.14 (J) of the Texas Business Corporation Act, Defendants seek to recover from Plaintiffs all expenses, including attorneys' fees and costs, incurred by Defendants and Pennzoil-Quaker State Company in investigating and defending this proceeding.

### V.   Further Amendment

10.     Defendants reserve the right to amend this answer in accordance with the Texas Rules of Civil Procedure or any order of the Court.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court deny all of Plaintiffs' requests for relief; enter judgment that Plaintiffs take nothing; order Plaintiffs to pay expenses as provided by Article 5.14 (J) of the Texas Business Corporation Act; and grant Defendants all the other relief to which they may be justly entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

James Edward Maloney
State Bar No. 12881500
Paul R. Elliott
State Bar No. 06547500
Michael C. Massengale
State Bar No. 24003704
Rebeca Aizpuru Huddle
State Bar No. 24012197
One Shell Plaza
910 Louisiana
Houston, Texas 77002
713.229.1234 Telephone
713.229.1522 Telecopier

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on this 5th day of August, 2005, I delivered a true and correct copy of the foregoing by to plaintiffs' counsel of record.

Rebeca Aizpuru Huddle

## VERIFICATION

STATE OF TEXAS                          §
                                        §
COUNTY OF HARRIS                        §

Before me, the undersigned notary, on this day, personally appeared James Edward Maloney, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said he read Paragraphs 5-8 of Defendants' Fourth Amended Original Answer and that the facts stated in those paragraphs are within his personal knowledge and true and correct.

_____
James Edward Maloney

Sworn to and subscribed before me by James Edward Maloney on August 19, 2005.

KATHERINE WINDISCH
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
OCT. 25, 2005

_____
Notary Public in and for the
State of Texas

My commission expires: _____.

# Tab 4

**"Exhibit 1" filed with the Court on August 14, 2015, which includes "Plaintiffs' Response to Defendants' Joint Opposition to Class Certification and Plaintiffs' Proposed Amended Plan for Trial of the Class Claims"**



FILED
*August 14, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk



Filed in The District Court
of Travis County, Texas

MAR 16 2015

At_____4:00____PM.
Velva L. Price, District Clerk

Cause No. D-1-GN-11-003205
(Consolidated)

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | TRAVIS COUNTY, TEXAS |
| BRIGHAM EXPLORATION COMPANY, et al., | § § § § | 261st JUDICIAL DISTRICT |
| Defendants. | § § § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OPPOSITION TO CLASS CERTIFICATION AND PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS

1012652_1



SCANNED

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...........................................................................................................1

II. ARGUMENT................................................................................................................2

A.  None of Defendants' Pleaded Defenses Prevent a Class Trial on Plaintiffs'
    Claims .......................................................................................................................2

    1.  The Delaware Supreme Court Has Already Found the
        Acquiescence, Ratification, Waiver and Estoppel Doctrines
        Inapplicable to Plaintiffs' Claims ............................................................3

    2.  Even if the Acquiescence, Ratification, Waiver or Estoppel
        Doctrines Apply, They Do Not Preclude Class Certification ....................6

        a.  The Defenses Merge with the Merits of Plaintiffs' Claims,
            Which Will Be Tried Through Common Proof.............................6

        b.  The Defenses Are Subject to Common Proof................................7

    3.  Texas' Proportionate Responsibility Statute Likewise Has No
        Application Here........................................................................................9

B.  Defendants' Remaining Challenges Fare No Better This Time than They
    Did Last Time ........................................................................................................11

    1.  Shareholders at the Time of Announcement of the Merger Have
        Standing to Pursue Non-Disclosure Claims.............................................11

    2.  Plaintiffs' Proposed Class Definition Is Appropriate .............................13

    3.  Numerosity Is Satisfied...........................................................................14

C.  Defendants Cannot Overcome the Reality that These Types of Cases Are
    Routinely Certified and Tried on a Class-Wide Basis...........................................16

III. CONCLUSION............................................................................................................18

1012652_1

## CASES

*Am. Family Mortg. Corp. v. Acierno,*
No. 290, 1994 Del. LEXIS 105 (Del. Mar. 28, 1994) ................................................6

*Bershad v. Curtiss-Wright Corp.,*
535 A.2d 840 (Del. 1987) ................................................5

*BMG Direct Marketing, Inc. v. Peake,*
178 S.W.3d 763 (Tex. 2005)................................................2

*Bundesen v. Beck,*
No. 11,347, 1992 Del. Ch. LEXIS 42 (Del. Ch. Feb. 12, 1992)................................................8

*Cooper v. Ross & Roberts, Inc.,*
505 A.2d 1305 (Del. Ch. 1986)................................................9

*Frank v. Wilson & Co.,*
32 A.2d 277 (Del. 1943) ................................................8

*Gantler v. Stephens,*
965 A.2d 695 (Del. 2009) ................................................3, 5, 7

*Gesoff v. IIC Indus.,*
902 A.2d 1130 (Del. Ch. 2006)................................................5

*Harris Constr. Co. v. GGP-Bridgeland, LP,*
No. H-07-3468, 2009 U.S. Dist. LEXIS 69476 (S.D. Tex. Aug. 10, 2009)................................................9

*In re Beatrice Cos., Inc. Litig.,*
No. 155, 1987 Del. LEXIS 1036 (Del. Ch. Feb. 20, 1987) ................................................14

*In re Celera Corp. S'holder Litig.,*
59 A.3d 418 (Del. 2012) ................................................*passim*

*In re Celera Corp. S'holder Litig.,*
No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012)................................................4, 5, 12

*In re Cox Radio, Inc. S'holders Litig.,*
No. 4461-VCP, 2010 Del. Ch. LEXIS 102 (Del. Ch. May 6, 2010),
*aff'd,* 9 A.3d 475 (Del. 2010)................................................14

*In re Gaylord Container Corp. S'holders Litig.,*
747 A.2d 71 (Del. Ch. 1999)................................................11

*In re Prodigy Commc'ns Corp. S'holders Litig.,*
No. 19113, 2002 Del. Ch. LEXIS 95 (Del. Ch. July 26, 2002) ...........................12, 14

*In re Rural Metro Corp. S'holders Litig.,*
88 A.3d 54 (Del. Ch. 2014)..........................................................................................17

*In re Transkaryotic Therapies, Inc.,*
954 A.2d 346 (Del. 2008) ......................................................................................12, 14

*In re Triarc Cos., Inc. Class & Deriv. Litig.,*
791 A.2d 872 (Del. Ch. 2001)......................................................................................14

*Ivanhoe Partners v. Newmont Mining Corp.,*
535 A.2d 1334 (Del. 1987) ...........................................................................................10

*Kahn v. Lynch Commc'n Sys., Inc.,*
638 A.2d 1110 (Del. 1994) .......................................................................................5, 10

*Klaassen v. Allegro Dev. Corp.,*
106 A.3d 1035, 2014 Del. LEXIS 119 (Del. Mar. 14, 2014) ....................................7, 8

*Methodist Hosps. of Dallas v. Tall,*
972 S.W.2d 894 (Tex. App.–Corpus Christi 1998, no pet.) ..........................................15

*N.J. Carpenters Pension Fund v. infoGROUP, Inc.,*
No. 5334-VCN, 2013 Del. Ch. LEXIS 43 (Del. Ch. Feb. 13, 2013)...............................6

*Norberg v. Security Storage Co. of Wash.,*
No. 12885, 2000 Del. Ch. LEXIS 142 (Del. Ch. Sept. 19, 2000)...................................5

*O'Malley v. Boris,*
No. 15735-NC, 2002 Del. Ch. LEXIS 33 (Del. Ch. Mar. 18, 2002) ..............................6

*Omnicare, Inc. v. NCS Healthcare, Inc.,*
809 A.2d 1163 (Del. Ch. 2002)....................................................................................12

*Pate v. Elloway,*
No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681
(Tex. App.–Houston [1st Dist.] Nov. 13, 2013, pet. denied)..........................................16

*Pate v. Havens,*
No. 04-0006, 2004 Tex. LEXIS 1160 (Tex. Nov. 5, 2004)..............................................17

*Pate v. Havens,*
No. 04-0006, 2005 Tex. LEXIS 305 (Tex. Apr. 8, 2005) ...................................2, 16, 17

*Rainbow Group, Ltd. v. Johnson,*
990 S.W.2d 351 (Tex. App.–Austin 1999, pet dism'd w.o.j.) .....................................15

*Realty Growth Investors v. Council of Unit Owners,*
453 A.2d 450 (Del. 1982) .........................................................................................6

*Rio Grande Valley Gas Co. v. City of Pharr,*
962 S.W.2d 631 (Tex. App.–Corpus Christi 1997, pet. dism'd w.o.j.) ........................16

*Schultz v. Ginsburg,*
965 A.2d 661 (Del. 2009) ..........................................................................................12

*Snyder Communs. v. Magana,*
94 S.W.3d 213 (Tex. App. – Corpus Christi 2002, pet. filed) ....................................14

*Turner v. Bernstein,*
768 A.2d 24 (Del. Ch. 2000) ......................................................................................1

*Yucaipa Am. Alliance Fund II, L.P. v. Riggio,*
1 A.3d 310, 357 (Del. Ch. 2010) ..............................................................................10

## STATUTES, RULES AND REGULATIONS

Texas Civil Practice & Remedies Code
§33.002(a)(1) ...........................................................................................................9
§33.003 ...................................................................................................................10
§33.003(b) ..............................................................................................................10

Texas Rules of Civil Procedure
Rule 42(c) .................................................................................................................1

Texas Business Corporation Act
Article 8.02 ...............................................................................................................9

8 Delaware Code
§253 .........................................................................................................................3
§327 .......................................................................................................................13

## SECONDARY AUTHORITIES

1 Herbert B. Newberg & Alba Conte,
*Newberg on Class Actions* (3d ed. 1992)
§3.05................................................................................................................16

## I. INTRODUCTION

At the December 17, 2014 status conference, the Court asked the parties to find a solution for trying this case on a class-wide basis. Accordingly, plaintiffs submitted an amended trial plan which incorporates the governing principles of Delaware law and explains how plaintiffs' claims and defendants' defenses will be tried on a class-wide basis. Plaintiffs' Proposed Amended Plan for Trial of Class Claims ("Trial Plan"), filed January 29, 2015. In addition to addressing plaintiffs' claims, the 19-page trial plan states the elements of each defense asserted by defendants (*see id.* at 4-12), identifies the common issues of law and fact arising from those defenses (*see id.* at 16-19), and explains how the defenses will be tried in a manageable, time efficient manner. *See id.*; Tex. R. Civ. P. 42(c). Thus, the trial plan accomplishes exactly what the Court of Appeals stated was necessary when it directed the Court to further consider plaintiffs' class certification motion – it meaningfully addresses defendants' pleaded defenses and explains how plaintiffs' claims can be tried on a class-wide basis.

Defendants, in turn, offer no solution. In fact, they do not cite plaintiffs' amended trial plan even a single time in their opposition. Instead, they continue to insist that shareholder actions challenging merger transactions simply cannot be certified as class actions. Based on their erroneous belief about the suitability of these types of actions for class treatment, defendants assert that it is not possible to craft a trial plan that explains how plaintiffs' claims can be tried on a class-wide basis.

Defendants are fundamentally wrong when they assert that this action cannot be certified as a class action. "In challenges to corporate mergers brought on behalf of the stockholders not affiliated with the defendants, it is *virtually never* the case that there is any legitimate basis that a defendant might be found liable to some plaintiffs but not others. Rather, the actions involve a challenge to a single course of conduct by the defendants that affects the stockholder class equally in proportion to their ownership interest in the enterprise." *Turner v. Bernstein*, 768 A.2d 24, 33 (Del. Ch. 2000) (emphasis added).

1012652_1

For that reason, shareholder actions challenging mergers are certified as class actions routinely in every jurisdiction where class actions exist. In fact, in the past year-and-a-half, plaintiffs' counsel here have tried *two* breach of fiduciary duty cases stemming from completed acquisitions of publicly listed companies on a class-wide basis in Delaware, *despite the fact that the defendants in those cases, like defendants here, asserted defenses based upon the doctrines of acquiescence, ratification, waiver and estoppel.* Plaintiffs' counsel has also tried one such case on a class-wide basis in Texas, *Pate v. Havens*, No. 04-0006, 2005 Tex. LEXIS 305 (Tex. Apr. 8, 2005). All three of these cases were tried in a matter of weeks, without the need for proof on individual issues.

When this Court initially certified a class of Brigham shareholders, it recognized and understood the reality. This case, like many others stemming from completed mergers involving Delaware companies, is well-suited for class certification, as explained in plaintiffs' amended trial plan. This case should be again certified for class treatment and plaintiffs' amended trial plan should be adopted by the Court.

## II.    ARGUMENT

### A.    None of Defendants' Pleaded Defenses Prevent a Class Trial on Plaintiffs' Claims

The rigorous analysis required under *Bernal* at class certification is not a one-way street. That standard applies equally to both plaintiffs' claims and defendants' defenses. Thus, just as plaintiffs cannot *obtain* class certification by relying solely on assertions of commonality and predominance, defendants cannot *defeat* certification by asserting myriad defenses and then proclaiming that they must be allowed to pursue these defenses on an individual-by-individual basis. As the Texas Supreme Court recognized in *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763 (Tex. 2005), one of defendants' primary authorities, "in many cases it would be unfair to allow a defendant to preclude class certification by simply alleging an affirmative defense." *Id*. at 778.

- 2 -

Yet that is exactly what defendants attempt to do here. For the reasons explained below, defendants' defenses based on the acquiescence, ratification, waiver and estoppel doctrines, along with their newly-pleaded proportionate responsibility defense, do not preclude certification of plaintiffs' breach of fiduciary duty claims.

1. **The Delaware Supreme Court Has Already Found the Acquiescence, Ratification, Waiver and Estoppel Doctrines Inapplicable to Plaintiffs' Claims**

Defendants do not grapple with the most troubling flaw in their position. The Delaware Supreme Court has already rejected the notion the acquiescence, ratification, waiver and estoppel doctrines have any application to plaintiffs' claims.

In *Gantler v. Stephens*, 965 A.2d 695 (Del. 2009), the Delaware Supreme Court held that shareholders do not "ratify" the deal by tendering their shares: "the ratification doctrine does not apply to transactions where shareholder approval is statutorily required." *Id.* at 714. Here, as defendants have acknowledged, shareholder approval – *i.e.*, shareholders being convinced to tender their shares to Statoil – was "statutorily required" in order for Statoil to execute the top-up option and complete the back-end of the short-form merger. *See* 8 Del. C. §253 (requiring threshold of shares to complete short-form merger). Because shareholder approval was statutorily required, defendants' "ratification" defense is baseless as a matter of law.

Similarly baseless is any assertion that the acquiescence, waiver and estoppel doctrines are a defense to plaintiffs' claims. In *In re Celera Corp. S'holder Litig.*, 59 A.3d 418 (Del. 2012), the Delaware Supreme Court held that a plaintiff (NOERS) who sold all of its shares into the open market before the merger closed was not subject to "equitable defenses" such as "waiver" and "acquiescence." *Id.* at 431. Just like here, *Celera* involved the acquisition of a publicly traded company via a tender offer with a back-end top-up option. *Id.* at 425. An objector, BFV, argued

- 3 -

that NOERS had acquiesced in the merger and had waived its claims by selling its shares. *Id.* at 426-27, 431. The court overruled the objection, finding that plaintiff had standing to pursue its claims, that plaintiff was an adequate class representative, and that the trial court had correctly certified a class which included shareholders who held shares at the date of the Board's approval of the merger agreement. *Id.* at 431; *In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *36 (Del. Ch. Mar. 23, 2012) ("the mere act of tendering one's shares while simultaneously pursuing an equitable claim is not sufficient to show acquiescence").

In so doing, the Delaware Supreme Court affirmed the findings of the Chancery Court, which held that such equitable defenses did not apply for at least two reasons. First, "[w]here a squeeze-out merger extinguishes the minority's legal right to remain shareholders of the corporation, 'the "choice" between accepting the possibly inadequate merger consideration and pursuing inadequate appraisal remedy' is not a 'meaningful choice.'" *Celera*, 2012 Del. Ch. LEXIS 66, at *39; *Celera*, 59 A.3d at 431. Here, too, because defendants structured the deal as a tender offer, and because the Board granted Statoil the right to purchase newly-issued shares so as to allow it to cross the 90% short-form threshold (upon obtaining 50% of the outstanding shares), class members were left without a meaningful choice. As in *Celera*, shareholders here could either: (i) hold on to their shares and be cashed out against their will; or (ii) sell their shares into the open market. Either way, shareholders would be forced to accept an inadequate price for their shares regardless of whether they agreed with the acquisition by Statoil. *Celera*, 59 A.3d at 431 ("The Court of Chancery has held that where minority shareholders are faced with a choice between accepting an inadequate merger buy-out or pursuing inadequate appraisal, the shareholders did not acquiesce in the merger by accepting the buy-out."); *Celera*, 2012 Del. Ch. LEXIS at *42 n.51 ("It is the inevitable nature of squeeze-out transactions . . . that frustrates meaningful choice.").

-4-

Second, the requirement that a shareholder show "unequivocal approval of the transaction" could not be met. Unlike the ordinary context of a long-form merger with a shareholder vote, in the context of a two-tiered tender offer with a back-end top-up option (again, the structure of the transaction at issue here), shareholders are "powerless to do anything about" the merger. *Celera*, 2012 Del. Ch. LEXIS 66, at *43.

Defendants *completely ignore* this controlling authority, presumably because it is fatal to their arguments against class certification and the amended trial plan. *See* Opp. at 8-15. The sole Delaware authority cited by defendants in support of their argument, *Norberg v. Security Storage Co. of Wash.*, No. 12885, 2000 Del. Ch. LEXIS 142 (Del. Ch. Sept. 19, 2000), is an unpublished trial court decision handed down before *Gantler* and *Celera*. Moreover, *Norberg* relies on *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987), which was later *overruled* by the Delaware Supreme Court. As the Chancery Court recognized in *Gesoff v. IIC Indus.*, 902 A.2d 1130, 1143 n.89 (Del. Ch. 2006), "*Kahn v. Lynch* implicitly overruled the holding in *Bershad*."[1] Not surprisingly, no court has since relied upon *Norberg* to preclude a shareholder's claim based upon

---

[1] *Norberg* is also factually inapposite. There, a shareholder filed a complaint alleging breach of fiduciary duty against the company's directors and majority shareholders. 2000 Del. Ch. LEXIS 142, at *1-*2. While that action was pending, the defendants offered the dissenting shareholders who sought appraisal a settlement, which was approved by the court, that would allow them to accept the merger consideration. *Id.* at *3. After filing his original unfairness claim and after the settlement agreement was offered, Norberg tendered his shares to the company for the merger consideration without any caveat that he would continue to pursue litigation. *Id.* at *7. The court found that *Norberg* had acquiesced because he "abandoned his appraisal claim, challenged the fairness of the price and process and later, despite his declared assessment of the unfairness of the transaction, freely and voluntarily accepted the merger consideration." *Id.* Unlike in *Norberg*, plaintiffs did not pursue an appraisal claim and certainly have not settled their claims against defendants. *Celera*, 2012 Del. Ch. LEXIS 66, at *44 (distinguishing *Norberg* on these grounds).

In addition, even though the *Norberg* court found that the plaintiff had acquiesced in the merger, it still contemplated the certification of a class and reserved a decision on that issue pending the proposal of an adequate class representative. 2000 Del. Ch. LEXIS 142, at *29.

the doctrines of acquiescence or waiver, to pare down a proposed class, or to deny a motion for class certification. Defendants fail to mention this in their opposition.

>    2.    Even if the Acquiescence, Ratification, Waiver or Estoppel Doctrines Apply, They Do Not Preclude Class Certification

>        a.    The Defenses Merge with the Merits of Plaintiffs' Claims, Which Will Be Tried Through Common Proof

Defendants also fail to grapple with the impact of plaintiffs' non-disclosure claims on the acquiescence, ratification, waiver and estoppel doctrines.

As defendants acknowledge, an essential factual predicate for applying the acquiescence, ratification, waiver and estoppel doctrines is that the shareholder was fully informed of all material facts. Opp. at 9 n.8. "Waiver is the voluntary and intentional relinquishment of a known right. . . . It implies knowledge of all material facts and intent to waive. Moreover, 'the facts relied upon must be unequivocal in nature.'" *Am. Family Mortg. Corp. v. Acierno*, No. 290, 1994 Del. LEXIS 105, at *13 (Del. Mar. 28, 1994) (quoting *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)) (internal citations omitted). To be subject to the defense of acquiescence, defendants must prove every plaintiff: (i) had full knowledge of their rights and all material facts; (ii) possessed a meaningful choice in determining how to act; and (iii) acted voluntarily in a manner showing unequivocal approval of the challenged conduct. *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, No. 5334-VCN, 2013 Del. Ch. LEXIS 43, at *25 (Del. Ch. Feb. 13, 2013). To obtain the benefits of ratification, the defendants must prove, by a preponderance of the evidence, that the plaintiffs consented to the switch after all material facts were disclosed. *O'Malley v. Boris*, No. 15735-NC, 2002 Del. Ch. LEXIS 33, at *22 n.28 (Del. Ch. Mar. 18, 2002).

Here, however, plaintiffs contend that the class was not fully informed when they tendered their shares to Statoil. Plaintiffs contend that defendants breached their duty of candor by failing to disclose

- 6 -

material information about the sales process for the Company, information related to the valuation of the Company, and potential conflicts of interest between Brigham, Statoil and their financial advisors. Consolidated Third Amended Class Action Petition, ¶¶127-140. As explained in plaintiffs' proposed amended trial plan, if plaintiffs establish that defendants did not disclose these facts, plaintiffs will prevail on their non-disclosure claims and will negate one of the essential elements of the defenses – *i.e.*, that Brigham's shareholders had full knowledge of all material facts surrounding the acquisition. *Gantler*, 965 A.2d at 712 (where the plaintiff alleges "a cognizable claim that the [14D-9] contained a material misrepresentation, [that allegation] eliminates an essential factual predicate for applying the doctrine [of ratification], namely, that the shareholder vote was fully informed").

If plaintiffs do not establish that shareholders were misled, plaintiffs' claims based on the breach of the duty candor fail and defendants are entitled to judgment on that claim, without the need for a separate finding on the defenses. Either way, these defenses will be disposed of as the parties litigate the merits of plaintiffs' claims. This practical reality explains why these cases are routinely certified and successfully tried on a class-wide basis, even though the acquiescence, ratification, waiver, and estoppel doctrines are routinely pleaded as defenses.

### b. The Defenses Are Subject to Common Proof

Defendants spend much of their brief arguing that the acquiescence, ratification, waiver and estoppel doctrines raise individual fact issues as to the intent and knowledge of class members. Opp. at 8-14. Again, defendants are wrong.

Citing Texas substantive law, defendants first attempt to import an individualized showing of intent into the acquiescence, ratification, waiver and estoppel doctrines. Opp. at 9-10. But no such showing is required under Delaware law, which supplies the substantive law governing plaintiffs' claims. *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 2014 Del. LEXIS 119, at *32 (Del.

- 7 -

Mar. 14, 2014) ("For the defense of acquiescence to apply, conscious intent to approve the act is not required. . . ."); *see id.* (plaintiff's "conscious intent" is immaterial to an acquiescence finding); *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del. 1943) ("conscious intent is not an element and ratification does not require a change of position or prejudice"); *Bundesen v. Beck*, No. 11,347, 1992 Del. Ch. LEXIS 42, at *26 (Del. Ch. Feb. 12, 1992) ("Estoppel does not require intent. . . ."). The reasons why a shareholder may (or may not) have sold their shares prior to the close of the acquisition, or tendered their shares to the purchaser in the tender offer, is irrelevant to these doctrines.

Defendants next argue that the acquiescence, ratification, waiver and estoppel doctrines have a knowledge component, and that such knowledge can only be demonstrated through individual proof. Opp. at 9-10. This argument overlooks two key points. First, plaintiffs have stipulated that, if defendants can prove that all material information relating to the merger was disclosed in the Schedule 14D-9 or Schedule TO, or otherwise publicly made available, defendants need not prove that each Class member was individually aware of these facts. Trial Plan at 18 n.1.

Second, although defendants avoid any meaningful discussion of the evidence they will use to support their defense, the source of class members' "knowledge" in this case is undoubtedly the same source of proof used to support plaintiffs' non-disclosure claims and indisputably common to all class members – the Schedule 14D-9 and Schedule TO filed by defendants with the Securities and Exchange Commission in connection with the tender offer by Statoil (and possibly the few press releases issued by the Company in connection with merger). As non-insiders, class members were not privy to the Company's internal financial information, strategic plans, the sales process, or the Board's discussions with its financial advisor; the information available to outside shareholders originated from the Schedule 14D-9 and Schedule TO.

- 8 -

### 3. Texas' Proportionate Responsibility Statute Likewise Has No Application Here

Recognizing that their defense based on the doctrines of acquiescence, ratification, waiver and estoppel will not carry the day, defendants recently amended their answer – for the third time – to add a purported defense based upon the doctrine of proportionate responsibility. In their opposition, defendants contend that Tex. Civ. Prac. & Rem. Code Ann. §33.002(a)(1) requires the trial court to submit a question to the jury apportioning responsibility for harm between the parties, and that this would require the submission of "thousands of proportionate responsibility questions [to] the jury." Opp. at 15.

This doctrine, however, is a creature of Texas substantive law and does not apply to plaintiffs' claims. Plaintiffs' claims are governed by the substantive law of Delaware because Brigham was a Delaware corporation. Article 8.02 of the Texas Business Corporation Act provides that the internal affairs (including the actions of its Board Members) of a foreign corporation doing business in Texas are controlled by the substantive law of the state of incorporation. Texas' proportionate responsibility statute, Tex. Civ. Prac. Rem. Code Ann. §33.002(a)(1), is substantive, not procedural law. *Harris Constr. Co. v. GGP-Bridgeland, LP*, No. H-07-3468, 2009 U.S. Dist. LEXIS 69476, at *3 n.1 (S.D. Tex. Aug. 10, 2009) ("Texas proportionate responsibility statutes reflect a substantive state policy" and are not procedural); *cf. Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1307 (Del. Ch. 1986) ("prejudgment interest, like the issue of damages, is substantive, and the state whose laws govern the substantive legal questions also govern the question of prejudgment interest"). Thus, this "defense" is not available to defendants here.

In any event, this "defense" falls apart under even minimal scrutiny. Defendants offer nothing to establish that the doctrine of proportionate responsibility would play any role at a trial on plaintiffs' claims. Any finding of proportionate fault must, of course, be grounded in some legally

- 9 -

culpable act by plaintiffs. Tex. Civ. Prac. & Rem. Code Ann. §33.003 provides, "[t]he trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that *violates an applicable legal standard. . . ." Id.* (emphasis added).

But, tellingly, defendants are silent on this point, failing to identify any legal duty purportedly owed by plaintiffs to defendants. Defendants' omission is not an oversight. While directors of a company owe a fiduciary duty to plaintiffs in connection with an acquisition, the reverse is not true. Non-insider shareholders do not owe legal duties to a company or its directors under Delaware law. *Yucaipa Am. Alliance Fund II, L.P. v. Riggio*, 1 A.3d 310, 357 (Del. Ch. 2010) ("the board owes fiduciary duties to the company, something Yucaipa, as a stockholder, generally does not"); *see also Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994) ("'a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation'") (emphasis in original) (quoting *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)). As such, there is no duty for plaintiffs to breach, and they cannot be held liable for some percentage of harm caused by defendants' misconduct.

Defendants also need to provide evidence of wrongdoing (along with some evidence establishing a causal connection between that wrongdoing and the harm) before any question regarding proportionate responsibility can be submitted to the jury. Tex. Civ. Prac. & Rem. Code §33.003(b). Again, defendants fall short.

In their opposition, defendants contend without explanation or authority that shareholders who sold their shares into the open market are "potentially responsible for all or part of any alleged harm."

- 10 -

Opp. at 15. As a matter of law, however, selling shares into the open market is not a basis for the jury to re-apportion fault between the parties because it is not a legally culpable act. Shareholders are free to sell their shares into the open market. *In re Gaylord Container Corp. S'holders Litig.*, 747 A.2d 71, 78 (Del. Ch. 1999) ("stockholders . . . are ordinarily free to sell their shares, and purchasers who . . . ordinarily free to buy those shares"). It strains credulity beyond the breaking point to suggest, as defendants do, that shareholders may bear some responsibility for the harm caused by the Board's failure to fulfill its fiduciary duties. Opp. at 15. Indeed, to plaintiffs' knowledge, no court has applied the doctrine of comparative fault to diminish or preclude a shareholder's recovery in circumstances even remotely similar to those presented by this case.[2]

### B.   Defendants' Remaining Challenges Fare No Better This Time than They Did Last Time

Defendants' remaining arguments challenge the merits of plaintiffs' disclosure claims, plaintiffs' proposed class definition, and plaintiffs' showing as to the numerosity prerequisite. *See* Opp. at 6-8. These challenges are largely a re-hash of arguments made by defendants and rejected by the Court during the initial class certification proceedings. In any event, they find no basis in Delaware law.

### 1.   Shareholders at the Time of Announcement of the Merger Have Standing to Pursue Non-Disclosure Claims

Defendants argue that shareholders as of October 17, 2011 do not have standing to assert any claims based on non-disclosure, because, they say, the disclosures at issue were not made until

---

[2]   Defendants apparently intend to assert this defense as to the group of shareholders who sold their Brigham shares prior to the close of the merger. Because all of these shareholders are similarly situated, this defense can be resolved with a single question to the jury, the answer to which would apply to the entire group. If the jury found this group of shareholders responsible for a portion of the harm, the recovery for that portion of the class could simply be reduced by the applicable percentage.

1012652_1

October 28, 2011. This argument is at odds with Delaware law, which is why defendants do not cite any authority for their position. *See* Opp. at 7.

Numerous Delaware courts have found that shareholders who held at the time of the announcement are the proper parties to pursue breach of fiduciary duty claims involving non-disclosure issues, even when they relate to a misleading proxy filed after the announcement of the merger. *See Celera*, 59 A.3d at 426, 430 (discussing supplemental disclosures to shareholders); *Celera*, 2012 Del. Ch. LEXIS 66, at *84-*88 (same); *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 356-57 (Del. 2008) (discussing plaintiffs' non-disclosure claims); *In re Prodigy Commc'ns Corp. S'holders Litig.*, No. 19113, 2002 Del. Ch. LEXIS 95, at *17-*18 (Del. Ch. July 26, 2002) (discussing remedial disclosures). In *Celera*, for example, the Delaware Supreme Court specifically rejected a challenge to the standing of a plaintiff who held shares at the time of the announcement of the merger, but sold the shares prior to the completion of the merger. *Celera*, 59 A.3d at 426, 430; *Celera*, 2012 Del. Ch. LEXIS 66, at *84-*88. The court found that the plaintiff "has legal standing to represent the class [which included shareholders at the time of the announcement of the merger] because it held Celera stock *at the time the merger was approved.*" 59 A.3d at 431 (emphasis added). In so doing, the court drew a distinction between shareholders who held at the time of the announcement, who have standing, and those who had purchased their shares after the proposed merger had been announced, who do not have standing. *Id.* at 430.

Similarly, in *Schultz v. Ginsburg*, 965 A.2d 661 (Del. 2009), which was cited with approval by the *Celera* court, the Delaware Supreme Court found that breach of fiduciary duty claims such as those at issue here are personal, and therefore do not transfer to later purchasers. *Id.* at 667-68 & n.12 (noting that this reasoning is in accord with Delaware's strong policy against the purchase of a lawsuit). This principle is well-rooted in Delaware law. *Omnicare, Inc. v. NCS Healthcare, Inc.*,

- 12 -

809 A.2d 1163, 1170 (Del. Ch. 2002) (the "policy animating 8 Del. C. §327 . . . has been applied to preclude stockholders who later acquire their shares from prosecuting direct claims").

### 2. Plaintiffs' Proposed Class Definition Is Appropriate

As they did in their initial motion for class certification, plaintiffs have proposed certification of a "class of all holders of Brigham common stock as of October 17, 2011" – the date of the announcement of the merger. Trial Plan at 1. This is the same class initially certified by the Court in its February 2013 order.

Despite already losing on this issue once, defendants resuscitate their argument that plaintiffs have not proposed a "workable or valid class definition." *Compare* Opp. at 6 *with* Defendants' Combined Response to Motion for Class Certification, filed Oct. 18, 2012, at 9-12. Defendants offer three challenges to the class definition. First, they argue that the class definition improperly includes disclosure claims. However, as discussed above, this argument lacks merit under Delaware law. *See supra* §II.B.1.

Defendants' second and third arguments fare no better. They argue that: (i) the proposed class improperly includes shareholders who sold their shares after October 17, 2011 (the shareholders who purportedly "waived" their claims); and (ii) the proposed class improperly includes shareholders who accepted the benefits of the merger transaction (the shareholders who purportedly "acquiesced" in the transaction). Opp. at 6-7. Both of these arguments are contrary to Delaware law.

The class definition proposed by plaintiffs is the proper formulation for breach of fiduciary duty actions under Delaware law brought in connection with tender offers, such as this one. "[I]t is commonplace for class certification orders entered by this Court in actions involving the internal affairs of Delaware corporations to define the relevant class as all persons (other than the defendants)

- 13 -

who owned shares as of a given date, and their transferees, successors and assigns." *In re Triarc Cos., Inc. Class & Deriv. Litig.*, 791 A.2d 872, 878-79 (Del. Ch. 2001). In merger litigation, classes will "ordinarily consist of those persons who held shares *as of the date the transaction was announced.*" *Prodigy*, 2002 Del. Ch. LEXIS 95, at *12 (emphasis added); *Celera*, 59 A.2d at 429-30 (upholding certification of a class which included shareholders as of the date of the announcement of the merger); *Transkaryotic*, 954 A.2d at 347 n.112 ("only a plaintiff who held TKT stock as of the date of the board's vote . . . has standing to pursue the aiding and abetting claim against Shire in the inducement of Langer's assumptive breach"); *In re Beatrice Cos., Inc. Litig.*, No. 155, 1987 Del. LEXIS 1036, at *7-*8 (Del. Ch. Feb. 20, 1987) (to have standing, "the plaintiff must have been a stockholder at the time the terms of the merger were agreed upon because it is the terms of the merger, rather than the technicality of its consummation, which are challenged").

To be sure, no Delaware court has defined a shareholder class based on the acquiescence, ratification, waiver or estoppel doctrines, especially after *Celera*. *See* Plaintiffs' Compendium of Class Certification Orders, filed Oct. 30, 2012 (compilation of 68 class certification orders); *Celera*, 59 A.3d at 431; *In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *20 (Del. Ch. May 6, 2010) (certifying a class of "'all record and beneficial holders of Class A common stock of [Cox] Radio, at any time during the period beginning on and including February 10, 2009, through and including May 29, 2009'"), *aff'd*, 9 A.3d 475 (Del. 2010).

### 3. Numerosity Is Satisfied

Echoing an argument at least one Texas court has characterized as "pure sophistry," defendants contend that certification must be denied because plaintiffs have not shown the precise number of shareholders who still held their shares at the close of the tender offer. Opp. at 8. *Snyder Communs. v. Magana*, 94 S.W.3d 213, 239-40 (Tex. App. – Corpus Christi 2002, pet. filed)

- 14 -

("Defendant alone has access to the exact numbers and any argument that Plaintiffs cannot state the exact number of class members is invalid and pure 'sophistry.'").

This argument fails for two reasons. First, defendants' challenge is predicated on their incorrect assertion that the proposed class is overbroad because it includes shareholders who sold their shares prior to the completion of the merger. As explained above, so long as shareholders held stock at the time of the announcement, they are properly included within the class. *See supra* §II.B.2.

Second, even if certification was proper only as to shareholders who held their shares as of the close of the tender offer, the numerosity prerequisite would still be satisfied. The numerosity requirement, in particular, "is not based on numbers alone." *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.–Corpus Christi 1998, no pet.). Rather, the test is whether joinder of all members is practicable in view of the size of the class and includes such factors as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 357 (Tex. App.–Austin 1999, pet dism'd w.o.j.). Defendants do not challenge any of these factors, apparently conceding that they are met.

As to the size of the class, there is sufficient evidence to support a finding that there are enough class members to render joinder impracticable. As defendants acknowledge, there were over one hundred million shares of Brigham stock issued and outstanding at the time of the announcement. Opp. at 8. Plaintiffs submitted similar evidence in the initial round of class certification briefing. *See* Jodlowski Sept. 17, 2012 Aff., Ex. 4 at 1 (Brigham Exploration Company, Form 10-Q, filed November 8, 2011) (117,318,932 shares outstanding prior to the acquisition).

- 15 -

Even if a large percentage of shareholders disposed of their shares before the close of the tender offer, which is unlikely given the short, one-and-a-half month tender offer period, there would still be thousands of shareholders within the class. This is easily enough to satisfy numerosity. *Id.* at 161-62 (finding no error in certification of a class comprised of 20 identifiable members); *Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631, 641 (Tex. App.–Corpus Christi 1997, pet. dism'd w.o.j.) (describing a class of over 90 municipalities as presumptively satisfying the numerous requirement); *see also* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §3.05 at 3-25 (3d ed. 1992) ("certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable").

## C. Defendants Cannot Overcome the Reality that These Types of Cases Are Routinely Certified and Tried on a Class-Wide Basis

The proof, as they say, is in the pudding. While defenses based upon the doctrines of acquiescence, ratification, waiver or estoppel are regularly asserted by defendants, these cases are routinely certified[3] and tried on a class-wide basis.

This Court need look no further than the *Pate v. Elloway* litigation to recognize that potential defenses such as acquiescence will not, as defendants contend, "result in an inevitable multitude of mini trials that would swamp the proposed class." *See* Opp. at 1. In *Pate*, "[m]ore than 99% of the outstanding shares were voted in favor of the merger." *Pate v. Elloway*, No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681, at *3 (Tex. App.–Houston [1st Dist.] Nov. 13, 2013, pet. denied). Yet, the court certified a class that included "'all persons or entities, other than defendants, who were Pennzoil-Quaker State Corp. shareholders of record on August 1, 2002.'" Jodlowski Oct. 30, 2012

---

[3]   As plaintiffs pointed out during the initial briefing on class certification, shareholder actions challenging mergers are routinely certified as class actions routinely in every jurisdiction where class actions exist, including in Texas. *See* Plaintiffs' Compendium of Class Certification Orders, filed Oct. 30, 2012 (compilation of 68 class certification orders).

- 16 -

Aff., Ex. 2, *Havens v. Pate*, No. 2002-16085. After class certification was upheld by the Texas Court of Appeals, and then twice (on a petition for review and then on a petition for rehearing) by the Texas Supreme Court, the case was tried to verdict on a class-wide basis in three weeks. *See Pate v. Havens*, No. 04-0006, 2004 Tex. LEXIS 1160 (Tex. Nov. 5, 2004); *Pate v. Havens*, No. 04-0006, 2005 Tex. LEXIS 305 (Tex. Apr. 8, 2005).

More recently, in Delaware, two breach of fiduciary duty cases stemming from a completed acquisition of a publicly listed company were recently tried on a class-wide basis, despite the fact that the defendants in those cases, like defendants here, asserted defenses based upon the doctrines of acquiescence, ratification, waiver and estoppel. *See In re Rural Metro Corp. S'holders Litig.*, 88 A.3d 54 (Del. Ch. 2014) (finding, after class-wide trial, that the directors of Rural Metro Corp. had breached their fiduciary duties to a class of shareholders in connection with a sale of the company and that the Board's financial advisor had aided and abetted that violation); Affidavit of Steven M. Jodlowski filed concurrently herewith, Ex. A, *In re Rural Metro Corp. S'holders Litig.*, No. 6350-VCL, Answer to Verified Second-Amended Complaint, at 86 (asserting affirmative defenses on the doctrines of acquiescence, estoppel, laches, unclean hands, or waiver); *id.*, Ex. B, *In re Dole Food Co., Inc. S'holder Litig.*, No. 8703-VCL, Answer and Affirmative Defenses of Defendants David H. Murdock and DFC Holdings, LLC to Second Amended Class Action Complaint at 245-46 (asserting acquiescence, ratification, waiver and estoppel defenses). These defenses did not prevent a class-wide trial in those actions and they should not do so here, either.

Defendants simply have no explanation as to why plaintiffs' claims cannot be tried on a class-wide basis, when it is routinely done in other actions involving the same claims, same defenses and transactions structured in the same way. Cases such as *Pate, Rural/Metro* and *Dole* – only a few

of many examples – have proven that cases such as this do not create manageability or commonality problems.

## III. CONCLUSION

For the reasons discussed above, plaintiffs respectfully request that the class be re-certified and that the Court adopt Plaintiffs' Proposed Amended Plan for Trial of Class Claims, filed January 29, 2015.

DATED: March 16, 2015          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
STEVEN M. JODLOWSKI

RANDALL J. BARON

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
MICHAEL G. CAPECI
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Class Counsel for Plaintiffs

- 18 -

BOULETTE & GOLDEN LLP
MICHAEL D. MARIN
Texas Bar #00791174
2801 Via Fortuna Drive, Suite 530
Austin, TX 78746
Telephone: 512/732-8900
512/732-8905 (fax)

Liaison Counsel

KENDALL LAW GROUP, LLP
JOE KENDALL
DANIEL HILL
JAMIE J. McKEY
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: 214/744-3000
214/744-3015 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8150 N. Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: 214/239-4568
281/254-7789 (fax)

ARMBURST & BROWN, PLLC
MICHAEL BURNETT
100 Congress Avenue, Suite 1300
Austin, TX 78702
Telephone: 512/435-2300
512/435-2360 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

DUNNAM DUNNAM HARMON WEST
  LINDLEY & RYAN LLP
HAMILTON P. LINDLEY
4125 W. Waco Drive
Waco, TX 76710
Telephone: 254/753-6437
254/753-7434 (fax)

BRODSKY & SMITH, LLC
EVAN J. SMITH
MARC ACKERMAN
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Telephone: 610/667-6200
610/667-9029 (fax)

FARUQI & FARUQI, LLP
SHANE T. ROWLEY
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: 212/983-9330
212/983-9331 (fax)

KOHN, SWIFT & GRAF, P.C.
DENIS F. SHEILS
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Telephone: 215/238-1700
215/238-1968 (fax)

THE WEISER LAW FIRM, P.C.
PATRICIA C. WEISER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/225-2678 (fax)

RYAN & MANISKAS, LLP
KATHARINE M. RYAN
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

SAXENA WHITE P.A.
JONATHAN M. STEIN
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone: 561/394-3399
561/394-3382 (fax)

Additional Counsel for Plaintiffs

- 21 -

Cause No. D-1-GN-11-003205
(Consolidated)

| | | |
|---|---|---|
| RAYMOND BOYTIM, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIGHAM EXPLORATION COMPANY, et al., <br><br> Defendants. | § § § § § § § § § § § § § | IN THE DISTRICT COURT OF <br><br> TRAVIS COUNTY, TEXAS <br><br> 261st JUDICIAL DISTRICT |

## AFFIDAVIT OF STEVEN M. JODLOWSKI IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OPPOSITION TO CLASS CERTIFICATION AND PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS

1012910_1

I, STEVEN M. JODLOWSKI, declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the State of California and am admitted *pro hac vice* in this action. I am associated with the law firm of Robbins Geller Rudman & Dowd LLP, one of counsel of record for plaintiffs. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I submit this affidavit in support of Plaintiffs' Response to Defendants' Joint Opposition to Class Certification and Plaintiffs' Proposed Amended Plan for Trial of Class Claims.

3.     Attached are true and correct copies of the following exhibits:

Exhibit 1:     Relevant excerpts of *In re Rural Metro Corp. S'holder Litig.*, No. 6350-CS, Answer to Verified Second Amended Complain (Del. Ch. Sept. 24, 2012); and

Exhibit 2:     Relevant excerpts of *In re Dole Food Co., Inc. S'holder Litig.*, .No. 8703-VCL, Answer and Affirmative Defenses of Defendants David H. Murdock and DFC Holdings, LLC to Second Amended Class Action Complaint (Del. Ch. Nov. 17, 2014).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of March, 2015, at San Diego, California.

_____
STEVEN M. JODLOWSKI

Sworn to me this ___\16___ day of March 2015.

_____
NOTARY PUBLIC

DEBORAH D. HAYES
Commission # 1951936
Notary Public - California
San Diego County
My Comm. Expires Oct 9, 2015

- 1 -

1012910_1

# DECLARATION OF SERVICE BY E-MAIL

I, June P. Ito, not a party to the within action, hereby declare that on March 16, 2015, I served the attached AFFIDAVIT OF STEVEN M. JODLOWSKI IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OPPOSITION TO CLASS CERTIFICATION AND PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS on the parties in the within action by e-mail addressed as follows:

| Counsel for Defendant(s) | | |
|---|---|---|
| Timothy R. McCormick<br>Michael W. Stockham<br>Timothy E. Hudson<br>Debora B. Alsup<br>Danley Cornyn | Thompson & Knight LLP | timothy.mccormick@tklaw.com<br>michael.stockham@tklaw.com<br>tim.hudson@tklaw.com<br>debora.alsup@tklaw.com<br>danley.cornyn@tklaw.com |
| Karl S. Stern<br>Michael C. Holmes<br>Jennifer B. Poppe<br>Thomas S. Leatherbury | Vinson & Elkins L.L.P. | kstern@velaw.com<br>mholmes@velaw.com<br>jpoppe@velaw.com<br>tleatherbury@velaw.com |
| **Counsel for Plaintiff(s)** | | |
| Michael Burnett | Armburst & Brown, PLLC | mburnett@abaustin.com |
| Kelly N. Reddell | Baron & Budd, P.C. | kreddell@baronbudd.com |
| Michael D. Marin | Boulette & Golden LLP | mmarin@boulettegolden.com |
| Evan J. Smith<br>Marc L. Ackerman | Brodsky & Smith, LLC | esmith@brodsky-smith.com<br>mackerman@brodsky-smith.com |
| Shane T. Rowley | Faruqi & Faruqi, LLP | srowley@faruqilaw.com |
| Hamilton Lindley | Dunnam & Dunnam | hlindley@ dunnamlaw.com |
| Joe Kendall<br>Daniel Hill<br>Jamie J. McKey | Kendall Law Group, LLP | jkendall@kendalllawgroup.com<br>dhill@kendalllawgroup.com<br>jmckey@kendalllawgroup.com |
| Denis F. Sheils | Kohn, Swift & Graf, P.C. | dsheils@kohnswift.com |
| Brian J. Robbins<br>Stephen J. Oddo<br>Edward B. Gerard | Robbins Arroyo LLP | brobbins@robbinsarroyo.com<br>soddo@robbinsarroyo.com<br>egerard@robbinsarroyo.com |
| Katharine M. Ryan<br>Richard A. Maniskas | Ryan & Maniskas, LLP | kryan@rmclasslaw.com<br>rmaniskas@rmclasslaw.com |
| Jonathan M. Stein | Saxena White P.A. | jstein@saxenawhite.com |
| Willie C. Briscoe | The Briscoe Law Firm | wbriscoe@thebriscoelawfirm.com |
| Patricia C. Weiser<br>James M. Ficaro | The Weiser Law Firm, P.C. | pw@weiserlawfirm.com<br>jmf@weiserlawfirm.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 16, 2015, at San Diego, California.

JUNE P. ITO

**EXHIBIT A**

HIkhg= Vhs 5: 5345 3;=48S
Wudqvdfwirq IG 799<9467
'Fdvh Qr19683OYFO



# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE RURAL METRO CORPORATION SHAREHOLDERS LITIGATION | Consolidated<br><br>C.A. No. 6350-VCL<br><br>REDACTED VERSION - FILED 09/27/12 |

## ANSWER TO VERIFIED SECOND-AMENDED COMPLAINT

Defendants Rural/Metro Corporation ("Rural/Metro" or the "Company"),

Christopher S. Shackelton, Michael P. DiMino, Eugene I. Davis, Earl P. Holland, Conrad

A. Conrad, and Henry G. Walker (collectively "the Rural/Metro Defendants"), by and

through their undersigned counsel, hereby respond to the Verified Second-Amended

Complaint (the "Amended Complaint") as follows:

## GENERAL DENIAL

Except as otherwise expressly recognized herein, the Rural/Metro Defendants

deny each and every allegation contained in the Amended Complaint. The Rural/Metro

Defendants state that the headings and sub-headings throughout the Amended Complaint

do not constitute well-pleaded allegations of fact and therefore require no response. To

the extent a response is required, the allegations of the headings and sub-headings in the

Amended Complaint are denied. The Rural/Metro Defendants expressly reserve the right

to seek to amend and/or supplement their Answer as may be necessary.

8.    The Rural/Metro Defendants are fully protected from liability under 8 *Del. C.* § 141(e).

9.    Plaintiff's putative claims and remedies are barred by the doctrines of acquiescence, estoppel, laches, unclean hands, or waiver.

10.    Without conceding that Plaintiff or any former Rural/Metro stockholder is entitled to appraisal rights, any claim for appraisal or quasi-appraisal by any member of the class who fails to follow the procedure set forth in 8 *Del. C.* § 262(d) is barred by such class member's failure to perfect appraisal rights in the manner specified in § 262 and as set forth in the proxy statement.

11.    The equitable remedy of quasi-appraisal is not available in whole or in part.

The Rural/Metro Defendants reserve the right to assert additional defenses as may be warranted by future discovery or investigation in this action.

## PRAYER FOR RELIEF

WHEREFORE, the Rural/Metro Defendants respectfully request that the Court enter judgment in their favor, and against Plaintiff, as follows:

1.    That Plaintiff's Verified Second-Amended Complaint be dismissed with prejudice and that judgment be entered against Plaintiff and in favor of the Rural/Metro Defendants;

2.    That the Rural/Metro Defendants be awarded the costs of this suit, including their disbursements and reasonable attorneys' fees and expert fees (if any); and

86

**EXHIBIT B**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE DOLE FOOD COMPANY, INC. STOCKHOLDER LITIGATION | ) ) ) ) ) | C.A. No. 8703-VCL |
| IN RE APPRAISAL OF DOLE FOOD COMPANY, INC. | ) ) ) ) | C.A. No. 9079-VCL Public Inspection Version Filed November 17, 2014 |

OF COUNSEL:

Peter M. Stone
Edward Han
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
(650) 320-1800

Dated: November 7, 2014

James L Holzman (DE Bar I.D. 663)
J. Clayton Athey (DE Bar I.D. 4378)
Patrick W. Flavin (DE Bar I.D. 5414)
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328
(302) 888-6500

*Attorneys for Defendants David H.
Murdock and DFC Holdings, LLC and
Non-Party DFC Merger Corp.*

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiffs' purported claims are barred in whole or in part because of or based on the doctrine of estoppel.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiffs' purported claims are barred in whole or in part based on the doctrine of laches.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiffs' purported claims are barred in whole or in part because the Plaintiffs have waived their claims and/or their right to seek damages.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

Plaintiffs' purported claims are barred in whole or in part based on the doctrine of acquiescence.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Exculpatory Provision)

Plaintiffs' purported claims are barred in whole or in part because

Dole's Amended and Restated Articles of Incorporation exculpate Defendants from liability to the fullest extent permitted under Delaware law pursuant to 8 *Del. C.* § 102(b)(7).

## TWENTIETH AFFIRMATIVE DEFENSE

### (Ratification)

Plaintiffs' purported claims are barred by the doctrine of ratification as a result of the vote of Dole stockholders approving the transaction.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Reserve All Rights)

Defendants hereby reserve and assert all affirmative defenses available. Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, affirmative defenses available. Therefore, Defendants reserve the right to assert additional affirmative defenses in the event that discovery indicates that it would be appropriate.

## PRAYER FOR RELIEF

Wherefore, Defendants pray for a judgment in favor of Defendants and against Plaintiffs as follows:

A.     That Plaintiffs take nothing by their Second Amended Complaint;

## CERTIFICATE OF SERVICE

Pursuant to the attached Declaration of Service by E-Mail, I hereby certify that a true and correct copy of the foregoing instrument has been served in accordance to the Texas Rules of Civil Procedure, to those listed on the attached service list, on this 16th day of March 2015.

/s/ *Michael D. Marin*

MICHAEL D. MARIN

# DECLARATION OF SERVICE BY E-MAIL

I, June P. Ito, not a party to the within action, hereby declare that on March 16, 2015, I served the attached PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OPPOSITION TO CLASS CERTIFICATION AND PLAINTIFFS' PROPOSED AMENDED PLAN FOR TRIAL OF CLASS CLAIMS on the parties in the within action by e-mail addressed as follows:

| Counsel for Defendant(s) | | |
|---|---|---|
| Timothy R. McCormick<br>Michael W. Stockham<br>Timothy E. Hudson<br>Debora B. Alsup<br>Danley Cornyn | Thompson & Knight LLP | timothy.mccormick@tklaw.com<br>michael.stockham@tklaw.com<br>tim.hudson@tklaw.com<br>debora.alsup@tklaw.com<br>danley.cornyn@tklaw.com |
| Karl S. Stern<br>Michael C. Holmes<br>Jennifer B. Poppe<br>Thomas S. Leatherbury | Vinson & Elkins L.L.P. | kstern@velaw.com<br>mholmes@velaw.com<br>jpoppe@velaw.com<br>tleatherbury@velaw.com |
| **Counsel for Plaintiff(s)** | | |
| Michael Burnett | Armburst & Brown, PLLC | mburnett@abaustin.com |
| Kelly N. Reddell | Baron & Budd, P.C. | kreddell@baronbudd.com |
| Michael D. Marin | Boulette & Golden LLP | mmarin@boulettegolden.com |
| Evan J. Smith<br>Marc L. Ackerman | Brodsky & Smith, LLC | esmith@brodsky-smith.com<br>mackerman@brodsky-smith.com |
| Shane T. Rowley | Faruqi & Faruqi, LLP | srowley@faruqilaw.com |
| Hamilton Lindley | Dunnam & Dunnam | hlindley@ dunnamlaw.com |
| Joe Kendall<br>Daniel Hill<br>Jamie J. McKey | Kendall Law Group, LLP | jkendall@kendalllawgroup.com<br>dhill@kendalllawgroup.com<br>jmckey@kendalllawgroup.com |
| Denis F. Sheils | Kohn, Swift & Graf, P.C. | dsheils@kohnswift.com |
| Brian J. Robbins<br>Stephen J. Oddo<br>Edward B. Gerard | Robbins Arroyo LLP | brobbins@robbinsarroyo.com<br>soddo@robbinsarroyo.com<br>egerard@robbinsarroyo.com |
| Katharine M. Ryan<br>Richard A. Maniskas | Ryan & Maniskas, LLP | kryan@rmclasslaw.com<br>rmaniskas@rmclasslaw.com |
| Jonathan M. Stein | Saxena White P.A. | jstein@saxenawhite.com |
| Willie C. Briscoe | The Briscoe Law Firm | wbriscoe@thebriscoelawfirm.com |
| Patricia C. Weiser<br>James M. Ficaro | The Weiser Law Firm, P.C. | pw@weiserlawfirm.com<br>jmf@weiserlawfirm.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 16, 2015, at San Diego, California.

JUNE P. ITO

# Tab 5
**Judge Dietz's order denying the request for a temporary injunction (CR305-307)**

Notice sent: Final Interlocutory None

Disp Parties:_____

Disp code: CVD / CLS _____

Redact pgs:_____

Judge __JKD__ Clerk __mVm__

DC    BK11327 PG689

CAUSE NO. D-1-GN-11-003205

| | | |
|---|---|---|
| RAYMOND BOYTIM, Individually and on Behalf of All Others Similarly Situated, | § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| vs. | § § § | |
| Brigham EXPLORATION COMPANY, BEN M. Brigham, DAVID T. Brigham, HAROLD D. CARTER, STEPHEN C. HURLEY, STEPHEN P. REYNOLDS, HOBART A. SMITH, SCOTT W. TINKER, STATOIL ASA, and FARGO ACQUISITION, INC., | § § § § § § § § | TRAVIS COUNTY, TEXAS |
| Defendants. | § § § | 201st JUDICIAL DISTRICT |

## ORDER DENYING TEMPORARY INJUNCTION

1.    On this 22nd day of November, 2011 came on to be heard Motion for Temporary Injunction ("Motion") filed by Plaintiff Raymond Boytim.

2.    The Court having found that all prerequisites of law have been satisfied and that this Court has jurisdiction over the parties and the subject matter of this cause, and having considered the pleadings on file, the arguments of counsel, and the evidence offered, finds as follows.

3.    Plaintiff asks the Court to enjoin the close of the tender offer by Statoil until Brigham Exploration discloses a net asset value analysis ("NAV") created by Jefferies in June 2011 (the "June 2011 NAV"). Plaintiff argues that Brigham Exploration's directors breached their fiduciary duty to the Brigham shareholders because they did not disclose the June 2011 NAV in the Schedule 14D-9, filed with the Securities and Exchange Commission and delivered to the Brigham shareholders.

US 709961v1

4.    The June 2011 NAV was created by Brigham Exploration's financial advisor, Jefferies, as marketing material to show potential buyers with more capital what could potentially be done with Brigham Exploration's assets. Brigham's CEO, Ben Brigham, testified that the June 2011 NAV is not a reliable indicator of Brigham Exploration's current value because Brigham Exploration lacks the capital to execute the model that is the basis for the June 2011 NAV. The Brigham board of directors did not ~~use~~ the June 2011 NAV when it recommended that the Brigham Exploration shareholders accept the tender offer, Ralph Eads, a to value shares representative of Jefferies, also testified that the June 2011 NAV is unreliable. Jefferies did not rely on the June 2011 NAV when it issued its fairness opinion in connection with the proposed tender offer.

5.    A temporary injunction may only be entered if the moving party demonstrates: (1) a probable right to the relief sought; (2) a probable, imminent, and irreparable injury in the absence of an injunction; and (3) that the balance of the equities favors the issuance of an injunction. *See Butnaru v. Ford Motor Co.*, 84 S.W. 198, 204 (Tex. 2002).

6.    In order to demonstrate that he has a probable right to the relief sought, Plaintiff is required to show that the June 2011 NAV is likely to be material under Delaware Law. *See Solomon v. Armstrong*, 747 A.2d 1098, 1128 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000). In order to be considered material, the June 2011 must be reliable. *Van de Walle v. Unimation, Inc.*, Civ. A. No. 7046, 1991 WL 29303, at *17 (Del. Ch. Mar. 7, 1991). "[V]aluations intended solely as sales pitches" need not be disclosed because they are not "responsible estimates of a company's value." *In re Pennaco*, 787 A.2d 691, 713 (Del. Ch. 2001).

7.    Plaintiff has not satisfied its burden to demonstrate that he has a reasonable probability of success on the merits. Because the June 2011 NAV constitute marketing

materials, Plaintiff is unlikely to demonstrate that the June 2011 NAV is either material or reliable, and that it therefore should have been disclosed.

8.      Plaintiff has further failed to show that there will be irreparable injury if an injunction is not issued, and that the harm he will suffer absent an injunction is greater than the harm Defendants will suffer with an injunction.

9.      IT IS THEREFORE ORDERED that Plaintiff's Motion for Temporary Injunction is DENIED.

SIGNED this the _22_ day of _November_, 2011 at ___:___ o'clock a.m./p.m.

_____
JUDGE PRESIDING

US 7099061v1

- 3 -